## MARYLAND TRUST COMPANY v. H. CLAYTON POFFENBERGER.

[No. 31, October Term, 1928.]

*Decided January 15th, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, J.J.

*Frederick J. Singley,* for the appellant.

*Vernon Cook,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The Lincoln Company, by its president and secretary, executed and delivered to the appellant its promissory note, dated May 10th, 1926, for the sum of $19,000, payable in ninety days thereafter to the order of the Maryland Trust Company, endorsed by H. C. Poffenberger, William B. Weed, Jr., and George M. Kimberly. The note was not paid at maturity, though duly presented for payment at such time, and as a result thereof, the appellant brought suit against H. C. Poffenberger as one of said endorsers.

The declaration contained six of the common counts and a special count upon the note. To this declaration, four pleas were filed: The first and second were the general issue pleas, "never promised" and "never indebted as alleged." The third plea was as follows:

"That the promissory note mentioned in the plaintiff's declaration is a renewal of a note previously held by the plaintiff. This earlier note was signed by the White Tailoring Company as maker, was endorsed by George M. Kimberly, and was secured by six hundred (600) shares of the capital stock of the New Amsterdam Casualty Company as collateral, the value of said collateral being at all times far in excess of the face of the note. That at the time of the renewal of the note, the White Tailoring Company had gone out of business and the Lincoln Company had succeeded to its business. That this defendant was requested by George M. Kimberly to endorse the new note, the said Kimberly representing and stating that the stock of the New Amsterdam Casualty Company, which was to remain with the plaintiff as collateral for the new note, was much more than sufficient to pay the same and would be first applicable to the payment of the note before any demand could be made upon this defendant and that, therefore, this defendant would assume no real risk whatsoever in endorsing said note, and that relying on this statement, he did endorse the same. Subsequent to the maturity of the note, said Kimberly repudiated his agreement with this defendant, above set forth, and requested the plaintiff to threaten suit against this defendant. Whereupon, the defendant offered to pay said note, but demanded that the collateral held by the plaintiff be delivered to him upon the making of such payment. The plaintiff, acting in concert with the said Kimberly and not for the purpose of protecting its own interests, but for the purpose of protecting the said Kimberly against this defendant and attempting to decide the controversy between the said Kimberly and this defendant in favor of said Kimberly, notified this defendant that they would not deliver the collat-

eral above mentioned to him upon payment of the note. The plaintiff is amply secured by the collateral above mentioned and has been notified of the existence of the agreement between Kimberly and this defendant, but the plaintiff nevertheless not for its own protection, but for the protection and benefit of said Kimberly, has refused to proceed against said collateral, and has refused to deliver said collateral to this defendant, even should he pay said note, and has wrongfully insisted upon the filing of this suit contrary to the agreement hereinbefore mentioned."

The fourth plea is identical with the third plea, except it is stated to be "for defense on equitable grounds."

To the first and second of these pleas, the plaintiff joined issue. To the third it filed the following replication:

"The plaintiff says that it has no knowledge of any representations made by George M. Kimberly to the defendant, but on the contrary, alleges that the said Kimberly deposited the collateral with the plaintiff as security for the payment of the note, upon the condition precedent that all remedies were to be exhausted against the other endorsers before applying the collateral to the payment of the note. That plaintiff denies that it is acting in concert with the said Kimberly and not for the purpose of protecting its own interest, but for the purpose of protecting said Kimberly against the defendant, and on the contrary alleges that by reason of the condition imposed by the said Kimberly in posting the collateral as security for the note, the plaintiff cannot deliver said collateral to the defendant without making itself liable to the said Kimberly."

And the same replication is filed to the defendant's fourth or equitable plea.

The defendant demurred to the third and fourth replications, issue was joined thereon, and the demurrer was sustained, with leave to the plaintiff to amend its replications to said third and fourth pleas within fifteen days thereafter. The plaintiff failed to amend its replications within the time

allowed it, and, on motion made by the defendant, there was entered a judgment of *non pros.* and a judgment for defendant's costs. It is from this action of the court that the appeal is taken.

No demurrer was filed to the pleas. It is, however, claimed by the appellant that, as the demurrer filed to the replications to the third and fourth pleas mounted up to the first error in the pleading, the court should have looked back of the replication and should have stricken down the pleas, first, because, as claimed by it, they amounted to the general issue pleas, and second, because they presented no proper defense.

It is undoubtedly true that if these pleas were nothing more than general issue pleas, they should have been considered, held bad, and stricken out upon the filing of the demurrer to the replications. But, as said by Judge McSherry in *Eastern Advertising Co. v. McGaw & Co.,* 89 Md. 83, "there is a great distinction between a plea which amounts to the general issue and a plea which discloses matter that may be given in evidence under the general issue. The general issue is a denial of the whole substance of the declaration, and puts upon the plaintiff the necessity of establishing all the essential allegations of the *narr.* A plea, however, which gives color, express or implied, to the plaintiff's statement—admits that statement to be true—but makes defense by setting up new matter in avoidance, can never be said to amount to the general issue, for the obvious reason that the element of denial is absent. Consequently, 'where the defendant elects to plead specially defenses in confession and avoidance which would be admissible in evidence under the general issue, the fact that they are admissible under the general issue does not make his special plea bad' [*Poe, Pl. & Pr.,* sec. 641 (3rd Ed.)]." 1 *Poe, Pl. & Pr.,* sec. 638 (5th Ed.); *Humner v. Stevenson,* 122 Md. 63.

Applying the above stated rule or principle of law to the third and fourth pleas in this case, we do not find them bad because amounting to the general issue. The pleas contain matters in avoidance of the defendant's liability incurred by him in having signed the note as an endorser. These mat-

ters in avoidance of his liability, even if admissible in evidence under the general issue, could be specially pleaded when coupled with the admission that he endorsed the alleged note sued on. *Eastern Advertising Co. v. McGaw & Co.,* 89 Md. 83.

The third and fourth pleas, in our opinion, do not amount to the general issue, but, we think, they are bad upon other grounds.

The right of the plaintiff to sue the defendant alone, the first endorser on the note, is not questioned by him, but he, in his third and fourth pleas, takes the position that he, upon the allegations therein contained, is entitled to have turned over to him by the plaintiff the six hundred shares of the capital stock of the New Amsterdam Casualty Company, deposited as collateral with the plaintiff by George M. Kimberly, a co-endorser on the note, and that its refusal to deliver the stock to him defeats recovery on the note.

The claim of the defendant is based upon the doctrine of subrogation or substitution, which, as this court has said, "is a peculiar feature of equity. It is not founded in contract, but has its origin in a sense of natural justice. So soon as a surety pays the debt of the principal debtor, equity subrogates him to the place of the creditor, and gives him every right, lien, and security, to which the creditor could have resorted for the payment of his debt. As said in the annotation to the case of *Dering v. Earl of Winchelsea,* 1 Lead. Cas. in Eq. 60 (m) 'Payment by one who stands in the relation of a surety, although it may extinguish the remedy or discharge the security, as respects the creditor, has not that effect as between the principal debtor and the surety. As between them it is in the nature of a purchase by the surety from the creditor; it operates an assignment in equity of the debt and all legal proceedings upon it, and gives a right in equity to call for an assignment of all securities; and, in favor of the surety, the debt and all its obligations and incidents, are considered as still substisting." A large number of American cases are cited, and they sustain fully these general principles." See *Orem v. Wrightson,*

51 Md. 34; *Wallace v. Jones,* 110 Md. 143; *Fuhrman v. Fuhrman,* 115 Md. 442; *Dickey v. Pocomoke Nat. Bank,* 89 Md. 302; *Demuth v. Old Town Bank,* 85 Md. 315; *Byles v. Tome,* 39 Md. 461; *Hollingsworth v. Floyd,* 2 H. & G. 90. See also Code, art. 8, sec. 5.

It will be found by an examination of the authorities that it has been generally held, to entitle the surety to subrogation to the creditor's rights, there must be a payment of the debt by the surety. Until there is a payment of the debt, the surety is not entitled to be substituted to the rights of the creditor. "It is not a liability to pay, but an actual payment to the creditor which raises the equitable right to subrogation." 25 *R. C. L.* 1315. Though some of the courts of the country have held that, where there is a valid tender of payment made by the surety to the creditor, such tender entitles him to subrogation. *Halpin v. Phoenix Ins. Co.,* 118 N. Y. 165, and other cases cited in note to 38 *Cyc.* 154. But in those cases the tender to be effectual must be without conditions to which the creditor can have a valid objection, or which will be prejudicial to his rights. 26 *R. C. L.* 640, and 38 *Cyc.* 1054, and cases cited under those authorities.

The debt in this case was not paid. Had it been paid by the defendant, no judgment of course could have been recovered against him in the suit upon the note, and the question whether he would then be entitled, under the facts alleged in the third and fourth pleas, to the collateral mentioned, was to be decided in some appropriate proceedings instituted for that purpose. In this case, there was not only no payment of the indebtedness, but no offer or tender, under the line of cases mentioned, equivalent to payment.

The offer, as disclosed by the pleas, was to pay the indebtedness upon the condition that the creditor would deliver to him, the surety, the capital stock of the New Amsterdam Casualty Company, deposited as collateral for the payment of the debt by the co-endorser Kimberly, which had a value greatly in excess of the amount of the indebtedness. His right to have such stock delivered to him was by the pleas based upon the alleged representation made to him by Kim-

berly, at the endorsement of the note, that such stock was to remain with the plaintiff, the creditor, as collateral for the note, and would be first applied "to the payment of the note before any demand could be made upon this defendant." The plea further alleges that Kimberly, subsequent to the maturity of the note, "repudiated his agreement," meaning thereby that he, Kimberly, at such time denied having made the representation therein stated. Therefore the plea itself shows that Poffenberger and Kimberly were at issue as to the alleged fact upon which Poffenberger in his pleas bases his right to the deliverance of the collateral to him, and, notwithstanding the existence of such controversy, the creditor is asked to turn over the property of Kimberly to the defendant against the protest of Kimberly, a co-endorser, in a suit in which the latter was not a party, and would not be bound by any decision therein.

The doctrine and practice of subrogation is of equitable origin and nature. Its operation is controlled and governed by the principles of equity, and to entitle one to subrogation his equity should be strong and his case clear, and there should be no subrogation where the rights and interests of the creditor is imperiled or prejudiced thereby. 25 R. C. L. 1314.

The offer or tender contained in said pleas, with the other facts therein alleged, does not, in this action, entitle the plaintiff to have delivered to him the collateral mentioned, and it fails to constitute a good defense in the suit against him to recover judgment on the note. For which reason the pleas are bad.

The judgment, therefore, will be reversed.

*Judgment reversed, with costs to the appellant, and new trial awarded.*