**SCOTT et al. v. NORTON HARDWARE CO. et al.**

No. 3189.

Circuit Court of. Appeals, Fourth Circuit.

Jan. 12, 1932.

Robert L. Pennington, of Bristol, Va., and George P. Cridlin, of Jonesville, Va., for appellants.

S. Bruce Jones and H. E. Widener, both of Bristol, Va., for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and McCLINTIC, District Judge.

PARKER, Circuit Judge.

This is an appeal by H. H. Scott and G. A. Maiden from an order of the court below dismissing their intervening petition in a suit filed by the Norton Hardware Company and the Norton Grocery Company against the People's National Bank of Abingdon, Va., and its shareholders. The suit of the Norton Hardware Company and the Norton Grocery Company was a bill in equity in the nature of a creditor's bill, brought under the Act of June 30, 1876, c.

156, § 2, 19 Stat. 63, 12 USCA § 65, to enforce the personal liability of the shareholders of the People's National Bank, which was in liquidation. Scott and Maiden filed their petition asking that they be allowed to intervene and assert against the bank and its shareholders a claim of $65,335.92 arising from the payment by them of that amount under a bond which they had executed to the First National Bank of Abingdon to indemnify that bank against loss under a contract by which it had agreed to pay the obligations of the People's National, including the amounts due its depositors. They asked that a receiver be appointed to take charge of and administer certain assets belonging to the People's National and that the statutory liability of its shareholders be enforced in an amount necessary to discharge its obligations. A motion to dismiss the intervening petition was allowed, and an amended petition was filed. From an order dismissing it, this appeal was taken.

From the petition as amended and the attached exhibits, the following facts appear: Scott and Maiden were two of the directors of the People's National Bank of Abingdon. That bank experienced financial difficulties in the spring of 1926, and its directors were struggling to keep it out of a receivership. A meeting of the directors was held on April 2d, and, upon the advice of the National Bank Examiner, a contract was made with the First National Bank of Abingdon, which obviated the necessity of a receivership and an immediate stock assessment, and which, in addition to protecting depositors and other creditors, was expected to result in saving something from its assets for the benefit of stockholders. Under this contract, the People's National transferred all of its assets to the First National; and the latter, on its part, agreed to pay in full the claims of depositors and certain other indebtedness, and, after reimbursing itself for the payments so made and the expenses incident thereto, to return the remainder of the assets, if any, to the People's National, or its liquidating agent. The contract provided that the People's National should deliver to the First National a bond in the sum of $100,000, executed by nine of its directors, and conditioned to indemnify the First National against any loss under the contract. The bond thus provided for was executed and delivered; Scott and Maiden signing it along with seven other directors.

After the First National had taken over the assets and assumed the liabilities of the

People's National, pursuant to the contract and under the guaranty of the bond above mentioned, notice was given of a meeting of the stockholders of the People's National, and same was held on May 20, 1926. At that meeting, it was decided by a vote of more than two-thirds of the stock to place the bank in liquidation; and liquidating agents were appointed for that purpose. The contract of April 2, however, was not questioned, nor was any attempt made to repudiate the action of the directors with regard thereto.

On November 4, 1929, Scott and Maiden were called upon by the First National to pay under the bond the loss which that bank had sustained under the contract; and they were required to pay and did pay to the First National the sum of $65,335.92. The First National had already collected $30,000 from another of the bondsmen; and the $65,335.92 paid by Scott and Maiden reimbursed it for the loss which it had sustained under the contract. There then remained in its hands uncollected notes and other assets of the People's National of a face value of approximately $105,000, which, under the contract, belonged to the People's National or its liquidating agent. With respect to these assets, Scott and Maiden claimed the right of subrogation, and asked that same be placed in the hands of a receiver to be administered for their benefit. They further asked that the statutory liability of the shareholders of the People's National be enforced so far as might be necessary for their reimbursement.

The appeal presents three questions for our determination: (1) Whether Scott and Maiden, by reason of their payments under the bond, occupy the position of creditors of the People's National; (2) whether they are entitled to subrogation to the rights of the First National as against the remaining assets of the People's National; and (3) whether they have a right, either as creditors of the People's National or by virtue of subrogation to the rights of the First National, to enforce the statutory liability against the shareholders of the People's National. We think that all of these questions must be answered in the affirmative.

■ It is contended by appellees that the payment made by Scott and Maiden to the First National did not discharge any debt due by the People's National, but merely the obligation under the bond given by the directors. From this it is argued that no promise on the part of the People's Nation-

al to reimburse Scott & Maiden is to be implied; that, if they have any rights on account of the payment, same arose after liquidation was commenced and consequently cannot be enforced against the assets of the bank in liquidation; and that there is no basis whatever for subrogation. We must determine in the beginning, therefore, the nature of the contract which was entered into between the two banks, and of the rights and obligations arising therefrom. A careful consideration of this contract leads irresistibly to the conclusion that what it effected was not a sale of assets but a transfer of same as security and for collection, and that the promise of the First National to pay the obligations assumed by it was not given in payment for the assets, but was a promise to advance money for the payment of the obligations of the People's National. The assets transferred were to be held as security for the advancements so made and collections therefrom were to be applied in reimbursement of the advancements. Equity regards substance and not form; and, when we look to the substance of the contract, the case is clearly one where the People's National was substituting one creditor for many, and was transferring its assets and giving bond for the security of that creditor. Hightower v. American National Bank, 263 U. S. 351, 44 S. Ct. 123, 68 L. Ed. 334; Wyman v. Wallace, 201 U. S. 230, 26 S. Ct. 495, 50 L. Ed. 738.

Articles five and seven of the contract completely answer the position of appellees that there was a sale of assets. The first of these paragraphs provides that whatever remains of the assets transferred after paying the liabilities of the People's National, expenses, fees, costs, etc., shall be returned to the People's National or its liquidating agent. The second stipulates that the First National "shall have wide discretion in the manner of handling the business and collecting and disposing of the assets transferred to it"; that it shall use due diligence and the best judgment of its officers with regard thereto; and that it may make renewals, receive partial payments, accept substitute collateral and "do whatever it believes to be the best interest of the parties to the agreement in order to effect the collection of the assets." In the face of these provisions, the contention that there was an absolute sale of the assets cannot be maintained.

■ While there was no express provision in the contract that the People's National would repay the amounts advanced by the

First National under the contract, such repayment was clearly contemplated; and there can be no question but that upon such advancements being made the right to reimbursement arose, and that the People's National became indebted to the First National for the amounts so advanced under a contract implied in law. 2 R. C. L. 776; White v. National Bank, 102 U. S. 658, 26 L. Ed. 250. And it will not do to say that this indebtedness arose after the bank was placed in liquidation; for it arose under and by virtue of the contract entered into between the banks prior to the liquidation, although the advancements were actually made thereafter. Hightower v. American National Bank, supra, 263 U. S. at page 360, 44 S. Ct. 123, 68 L. Ed. 334.

■ We come, then, to the question as to whether Scott and Maiden are creditors of the People's National. The bond signed by them was to indemnify the First National against loss under the contract, whereby it agreed to assume the obligations of the People's National and under which, as we have seen, it was entitled to reimbursement from that bank. The bond was thus in effect a guaranty bond, in which the guarantors undertook that the First National would be repaid the amounts which it might advance for the People's National and for which the latter was primarily liable. Such being its essential nature, there can be no question but that, when Scott and Maiden were required to make payments under it, they became entitled to recover same against the People's National and to be treated as creditors of that institution. The law on the subject is elementary and is well stated, with citation of authorities, in 28 C. J. 1037 as follows: "Where a guarantor, who has entered into a contract of guaranty at the request of or with the consent of the principal obligor, pays or is compelled to pay his principal's debt, the law raises an implied promise, unless there is an express one, on the part of the principal to reimburse the guarantor, and on the payment of the debt the guarantor at once has a right of action against the principal for reimbursement of the amount which he has paid."

■■ We do not think that the fact that Scott and Maiden were directors of the People's National affects at all their right to recover. There is no element of fraud suggested in the case. As directors of the bank, they were seeking to save the rights of its depositors and stockholders; and in order to prevent a receivership and have the accounts of depositors promptly paid they signed as guarantors the bond in question. They were required under that bond to discharge what was primarily an obligation of the bank; and we know of no reason why they are not entitled to the rights which any other guarantors might assert under similar circumstances. Transactions between a corporation and its directors are carefully scrutinized by equity; but it is universally held that where a director acts openly, in good faith and in aid of the legitimate purposes of the corporation, he may lend it money, take security from it for money loaned, and, where he has paid the claims of other creditors, be subrogated to their rights. See C. J. vol. 14A pp. 132–135 and cases cited; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Miller v. Halsted, Fed. Cas. No. 9,572; In re Lake Chelan Land Co. (C. C. A. 9th) 257 F. 497, 5 A. L. R. 557. Where he pays the debts of the corporation with his own funds, he is ordinarily entitled to reimbursement. Fletcher Cyclopedia of Corporations, vol. 4, p. 3628. And where a bank gives a bond to secure a public deposit with certain of its officers and directors as sureties, a pledge of assets to secure the sureties from loss on the bond will be upheld. Page Trust Co. v. Rose, 192 N. C. 673, 135 S. E. 795. In the light of these principles, there is certainly no ground for denying relief to these directors, who without profit to themselves, and solely in the interest of the bank, its stockholders, and depositors, signed as guarantors on the bond.

■■ The point is raised under Richmond v. Irons, 121 U. S. 27, 7 S. Ct. 788, 30 L. Ed. 864, and Schrader v. Manufacturers' National Bank of Chicago, 133 U. S. 67, 10 S. Ct. 238, 33 L. Ed. 564, that the debt sought to be enforced was created during the process of liquidation and is not one which can be enforced against stockholders. But, as suggested above, the answer to this is that the contract with the First National and the bond signed by Scott and Maiden were executed more than a month prior to the meeting of the stockholders which authorized the liquidation. The rights of Scott and Maiden, therefore, arise out of the enforcement of contracts antedating the liquidation; and the cases relied upon have no application. Hightower v. American National Bank, supra; Taylor v. American National Bank (D. C.) 2 F.(2d) 479. The implied contract to indemnify a surety arises, not when he sustains his loss, but when he con-

tracts his obligation. Ward v. Henry, 5 Conn. 595, 13 Am. Dec. 119.

■ Little need be said as to the contention made that Scott and Maiden are to be denied the rights of reimbursement or subrogation on the ground that they are volunteers. Certainly a guarantor who is held to liability under a bond which he has executed is not a volunteer in any sense in which that term has ever been used in the law. The fact that appellants were under no legal obligation to sign the bond in the first place is, of course, immaterial. A surety is not to be denied reimbursement or subrogation because he signed for accommodation rather than for profit. On the contrary, the accommodation surety has always been one of the favorites of the law.

■ For the reasons stated, we think there can be no question as to the rights of appellants to sue as creditors of the People's National on the basis of the amounts which they have been required to pay by reason of the bond which they executed. We think it equally clear that they are entitled to be subrogated to the rights of the First National, both with respect to the remaining assets and with respect to the statutory liability of shareholders of the People's National. The right of the guarantor to subrogation is well settled. Pomeroy's Equity Jurisprudence (4th Ed.) §§ 1419, 2335 and 2351; 12 R. C. L. 1098; Ward v. Henry, supra; Carter v. Jones, 40 N. C. 196, 49 Am. Dec. 425; Maryland Trust Co. v. Poffenberger, 156 Md. 200, 144 A. 249, 62 A. L. R. 546; Lacy v. Maryland Casualty Co. (C. C. A.) 32 F.(2d) 48. And the right of subrogation extends not only to the securities which the First National held and which it might have applied to the satisfaction of the indebtedness of the People's National, but, as the First National unquestionably had the right to enforce the stockholders' liability for the satisfaction of its debt (Hightower v. American National Bank, supra), it extends also to that right. Taylor v. American National Bank, supra. The rule applicable, as we understand it, is well stated by Judge Freeman in the note appearing in 99 Am. St. Rep. 474, 485, as follows: "One entitled to subrogation is put in all respects in the place of the person or creditor to whose rights he is subrogated. He is entitled to all the rights, remedies, and securities which the creditor had in respect to the debt, and to avail himself of them as fully in every particular as the creditor could have done."

And the rule, as it applies to the right to proceed against third persons, is thus stated in Baylies on Sureties and Guarantors: "The right of subrogation to the remedies of the creditor on payment of the debt of the principal is not restricted to the remedies which the creditor had as against the principal, but extends to all the remedies which he had against the principal and others liable for the debt."

And Chancellor Walworth in Eddy v. Traver, 6 Paige (N. Y.) 521, 31 Am. Dec. 261, thus states the rule: "It is an established principle of equity that sureties, or those who stand in the situation of sureties for those who pay a debt for them, are entitled to stand in the place of the creditor, or to be subrogated to all his rights as to any fund, lien or equity which he may have against any other person or property on account of the debt."

See, also, 25 R. C. L. 1377 et seq.; Pomeroy's Equity Jurisprudence (4th Ed.) vol. 5, § 2351; American Bonding Co. v. National, etc., Bank, 97 Md. 598, 55 A. 395, 99 Am. St. Rep. 466; National Surety Co. v. State Savings Bank (C. C. A. 8th) 156 F. 21, 26, 14 L. R. A. (N. S.) 155, 13 Ann. Cas. 421.

In Taylor v. American National Bank, supra, the right of directors who had sustained loss as guarantors to be subrogated to the rights of the bank which they had indemnified to proceed against the stockholders of their own bank was upheld. The fact that in that case the directors in the contract of guaranty reserved rights against shareholders does not furnish a basis for distinction. The right of subrogation depends, not upon express contract, but upon equities arising from the fact that the directors have paid under their bond a debt for which the bank was primarily liable, and are in equity and good conscience entitled to all of the remedies belonging to the creditor.

For the reasons stated, we think the learned judge below erred in dismissing the petition. The order dismissing same will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

Reversed.