675 A.2d 995

**Georgette ROBERTS, Individually, etc., et al.**

v.

**TOTAL HEALTH CARE, INC.**

**No. 1119, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

May 3, 1996.

Alan J. Mensh (Saul E. Kerpelman, on the brief), Baltimore, for appellants.

Monte Fried (Tracey D. King and Wright, Constable & Skeen, on the brief), Baltimore, for appellee.

Argued before WENNER, FISCHER and HARRELL, JJ.

FISCHER, Judge.

Georgette Roberts and Saul E. Kerpelman, Esq., Roberts's attorney, appeal from an order by the Circuit Court for

Baltimore City (Ward, J.) that granted Total Health Care, Inc.'s (Total Health Care) motion for summary judgment. The circuit court's order required Roberts and Kerpelman to reimburse Total Health Care $59,880 for medical care received by Roberts's children and paid for by Total Health Care. In appealing the circuit court's summary judgment order, Roberts and Kerpelman present for our consideration the following issues, which we have reworded and reorganized:

I. Did the circuit court err in holding that Md.Code (1982, 1994 Repl.Vol., 1995 Supp.), § 15–120 of the Health–General Article did not violate the due process of law?

II. Did the circuit court err by finding that Total Health Care had a right to reimbursement from Roberts? [1]

## FACTS

Total Health Care is a health maintenance organization that provides medical services for its members. When the events of this case occurred, Total Health Care was under contract with the Department of Health and Mental Hygiene of the State of Maryland (the Department) to provide medical care for indigent individuals who qualified for medical assistance under the Maryland Medical Assistance Program (the Program) and who were enrolled with Total Health Care.[2] In return for providing these services, the Department paid Total Health Care a negotiated per capita payment.

In addition to the per capita payment, the Department assigned Total Health Care its right to subrogate third party tort claims. The contract provides, in part:

---

1. In their brief, Roberts and Kerpelman argued in separate sections that: (1) section 15–120 makes no provision for the assignment of the Department's subrogation right; and (2) Total Health Care has no right to collect the money under the laws governing the right of subrogation. We, however, view the assignment issue as part of the overall discussion involving subrogation. Thus, we combined these two questions into one issue.

2. Originally, the Department entered into a contract with Total Health Care's predecessor, West Baltimore Community Health Care Corporation, which changed its name to Total Health Care, Inc. in 1989.

a. If an enrollee under the terms of this contract has a cause of action against a person, the HMO–MA [Total Health Care] shall be subrogated to that cause of action to the extent of any payments made, or costs incurred, by the HMO–MA on behalf of the enrollee that result from the occurrence that gave rise to the cause of action. Costs incurred by the HMO–MA may be considered as including the HMO–MA's reasonable and customary charges for services furnished by the HMO–MA's own staff or that of subcontractors.

b. The Department intended hereby to assign to the HMO–MA its right of subrogation under section 15–120, Health–General Article, *Annotated Code,* but only to the extent to which these rights are assignable under the laws of Maryland. The Department accepts no liability for the failure or inability of the HMO–MA to recover sums potentially available to it under the terms of this section.

Roberts, along with her two children, were members of Total Health Care when Roberts's children suffered lead paint poisoning in 1987. The children were treated at Johns Hopkins Children's Hospital with special medical treatment that Total Health Care could not provide in-house. Total Health Care paid for the services at Johns Hopkins, which totaled $59,880.

In 1989 Roberts filed a suit against her landlord in 1988 in the circuit court for injuries suffered by her two children. Total Health Care notified Roberts and Kerpelman on June 5, 1991, and again on July 23, 1991, that it was asserting its subrogation right. On October 28, 1993, Roberts's civil suit settled for $330,000, which amount was to be held in a trust for the children. Kerpelman placed this money in his escrow account.[3]

Following the settlement, Total Health Care again requested payment for the money expended on behalf of Roberts's

---

3. We are not implying that Kerpelman's actions were, in any manner, unethical or in violation of the Maryland Rules of Professional Conduct.

children. Roberts and Kerpelman refused to honor the request for payment. Following the refusal to pay, Total Health Care filed a lawsuit in the circuit court to collect the $59,880.

Total Health Care filed a motion for summary judgment against Roberts and Kerpelman based on its asserted statutory and common law subrogation rights.[4] Both sides filed memoranda before the circuit court conducted a hearing. After hearing from the parties, the circuit court granted Total Health Care's motion for summary judgment and ordered Roberts and Kerpelman to pay Total Health Care $59,800. Following the circuit court's grant of summary judgment, Roberts and Kerpelman filed this timely appeal.

## DISCUSSION

This case centers on Md.Code (1982, 1994 Repl.Vol., 1995 Supp.), § 15–120 of the Health–General Article (HG), which details the Department's right to establish a subrogation claim against persons enrolled in the Program (Program recipient).[5] Section 15–120 reads, in part, as follows:

> (a) In general.—If a Program recipient has a cause of action against a person, the Department shall be subrogated to that cause of action to the extent of any payments made by the Department on behalf of the Program recipient that result from the occurrence that gave rise to the cause of action.
>
> (b) Holding money for Department.—(1) Any Program recipient or attorney, guardian, or personal representative of a Program recipient who receives money in settlement of or under a judgment or award in a cause of action in which

---

**4.** The motion for summary judgment decided by the circuit court and appealed to this Court was the second summary judgment motion filed by Total Health Care. The circuit court did not decide the first summary judgment motion because Roberts did not receive proper service as of the date of the first motions hearing.

**5.** In this opinion all statutory references are from Md.Code (1982, 1994 Repl.Vol., 1995 Supp.), § 1–101 *et seq.* of the Health–General Article (HG) unless otherwise specified.

the Department has a subrogation claim shall, after receiving written notice of the subrogation claim, hold that money, for the benefit of the Department, to the extent required for the subrogation claim, after deducting applicable attorney's fees and litigation costs.

(2) A person who, after written notice of a subrogation claim and possible liability under this paragraph, disposes of the money, without the written approval of the Department, is liable to the Department for any amount that, because of the disposition, is not recoverable by the Department....

## I.

 Roberts and Kerpelman argue that section 15–120 is unconstitutional because, in their opinion, it allows a subrogee to attach monetary awards of Program recipients without first complying with procedural due process safeguards.[6] Specifically, Roberts and Kerpelman maintain that Total Health Care's right to subrogation established a lien against the money awarded to Roberts's children without first providing notice and an opportunity to be heard. Total Health Care counters that section 15–120 does not establish a lien and thereby does not constitute a taking. In the alternative, Total Health Care argues that even if section 15–120 amounts to a taking, Roberts and Kerpelman received sufficient notice and hearing to comply with procedural due process in accordance with constitutional requirements.

---

**6.** Kerpelman is a party to this case as required by Md. Rule 2–211(a). He does not, however, have standing to contest the circuit court's order to pay Total Health Care $59,880 from the money held in escrow. Kerpelman does not have a possessory interest in the money because he is merely holding it in escrow for Roberts's children's benefit. Additionally, attorneys suffer no injury by having to pay subrogation fees from money held in a client's escrow account because section 15–120 allows them to collect their attorney's fees before paying a subrogation claim.

Section 15–120 leaves open the question of whether an attorney holding a previous judgment in a client's escrow account could be liable if he does not pay a subrogation claim and instead allows the Program recipient to spend the money. Such a factual scenario is not before the Court in this appeal.

■ As with any constitutional challenge, the statute in question is presumed to be constitutional until proven otherwise by the challenger. *Cider Barrel Mobile Home Court v. Eader,* 287 Md. 571, 579, 414 A.2d 1246 (1980). In this case, Roberts and Kerpelman have the burden of demonstrating to this Court that section 15–120 is unconstitutional on its face. Roberts and Kerpelman did not argue that the statute was unconstitutional as applied.

## A.

■ This Court and the Court of Appeals have consistently interpreted the Due Process Clause of the Fourteenth Amendment [7] and Article 24 of the Maryland Declarations of Rights [8] as complementary provisions that protect the same rights. *Bureau of Mines v. George's Creek,* 272 Md. 143, 156, 321 A.2d 748 (1974). Thus, the Supreme Court's interpretations of the Fourteenth Amendment function as authority for the interpretation of Article 24. *E.g., Pitsenberger v. Pitsenberger,* 287 Md. 20, 27, 410 A.2d 1052, *appeal dismissed,* 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10, *rehearing denied,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980).

The due process protections contain both a substantive and a procedural component. Substantive due process protects persons from arbitrary or unreasonable actions. *E.g., Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 846–847, 112 S.Ct. 2791, 2804–2805, 120 L.Ed.2d 674 (1992). "Procedural due process," on the other hand, "imposes constraints on governmental decisions [that] deprive individuals of 'liberty' or 'property' interests within the meaning of

---

**7.** The Due Process Clause of the Fourteenth Amendment ensures that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of the law." U.S. Const. amend. XIV, § 1.

**8.** Article 24 of the Maryland Declaration of Rights is the state constitutional compliment to the Fourteenth Amendment's Due Process Clause and provides that "no man ought to be ... disseized of his ... life, liberty, or property, but by the judgment of his peers, or by the Law of the Land." Md. Const. Declaration of Rights, art. 24.

the Due Process Clause." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). "At the core of the procedural due process right is the guarantee of an opportunity to be heard and its instrumental corollary, a promise of prior notice." Lawrence Tribe, *American Constitutional Law* § 10–15, at 732 (2d ed.1988). Roberts and Kerpelman assert only a procedural due process argument.

■ In order to invoke procedural due process protections, the party asserting unconstitutionality must show that *state action* has been employed *to deprive* that party of a substantial interest in property. *Fuentes v. Shevin,* 407 U.S. 67, 84–85, 92 S.Ct. 1983, 1996–1997, 32 L.Ed.2d 556 (1972); *Golden Sands Club v. Waller,* 313 Md. 484, 488, n. 4, 545 A.2d 1332 (1988); *Pitsenberger,* 287 Md. at 27, 410 A.2d 1052. Only if a constitutional taking involving state action is established can a court then apply the *Mathews* balancing test to determine what procedural due process is constitutionally required. *Mathews,* 424 U.S. at 332–335, 96 S.Ct. at 901–903; *Pitsenberger,* 287 Md. at 28, 410 A.2d 1052. In this case, we must focus our analysis on section 15–120 to determine whether it constitutes a taking without the benefit of due process.[9]

## B.

■ Not every interference with a person's "life, liberty, or property" constitutes a taking that would otherwise require compliance with the procedural due process safeguards. To qualify as an unconstitutional taking under the Constitution, the state's actions must create a severe deprivation of property. *Fuentes,* 407 U.S. at 84, 92 S.Ct. at 1996. This deprivation of property must significantly interfere with the complainant's property interest. *Id.* at 84–85, 92 S.Ct. at 1996–1997;

---

9. Total Health Care does not argue that its request for payment and the obligation to pay based on section 15–120 was merely private action as opposed to state action. We will therefore assume, *arguendo,* that Total Health Care's request for payment and the section 15–120 obligation for payment constituted a state action.

*Barry Properties v. Fick Bros.*, 277 Md. 15, 23–27, 353 A.2d 222 (1976).

■ The creation and attachment of a lien, along with other possessory prejudgment remedies such as replevin and garnishment, constitutes a constitutional taking and is thereby "subject to the strictures of due process." *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 85, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988); *e.g., Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (striking down a Connecticut prejudgment attachment statute because it authorized attachment without notice and hearing); *North Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) and *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (finding that prejudgment garnishment statutes require compliance with due process); *Fuentes*, 407 U.S. at 80–86, 92 S.Ct. at 1994–1997 (finding that a replevin action required compliance with due process); *Golden Sands*, 313 Md. at 488, n. 4, 545 A.2d 1332 (agreeing with the circuit court's determination that the Maryland Contract Lien Act, found in Md.Code (1996 Repl.Vol.), § 14–201 *et seq.* of the Real Property Article, involves a constitutional taking); *Barry Properties*, 277 Md. at 24, 353 A.2d 222 (concluding that the then existing mechanics' lien statute deprived an owner of a significant property interest and was therefore unconstitutional because it lacked adequate notice and hearing provisions).

■ A lien is a "claim, encumbrance, or charge on property for payment of some debt, obligation or duty." *Black's Law Dictionary* 922 (6th ed.1990). The imposition of a lien or other possessory prejudgment remedy constitutes a constitutional taking because it deprives the person subject to the lien of a significant property interest. These possessory prejudgment remedies are not causes of action, they are remedies for collecting money from a debtor.

Section 15–120 is not a remedial statute that allows subrogees to encumber property to secure a debt previous to a judicial order. Instead, section 15–120 gives the Department

the legal cause of action to file a subrogation claim against a Program recipient who has received compensation for a tort claim.

■ Section 15–120(b) and its request that parties hold subrogated money judgments or settlements or face potential liability for the money not recovered is not a taking that demands prior notice and hearing. The section 15–120(b) obligation to hold and pay money differs from the aforementioned possessory prejudgment remedies in that section 15–120 neither vests in a subrogee a possessory interest in a Program recipient's monetary award nor interferes with the Program recipient's use and enjoyment of that monetary award. Instead of establishing a possessory interest, section 15–120(b) merely serves to put a Program recipient on notice that it owes the Department a certain sum of money and that the Department has a right to file a claim to collect this money.

Making parties liable for expenses paid by a subrogee is not the equivalent of having a party hold an enforceable lien on a piece of property or money judgment. Even after receiving notice of the subrogation claim, a Program recipient still has full possessory interest in that award and can do with the money whatever he or she wants.

In this case, Roberts, for her children, had full title and possessory interest in the money held by Kerpelman. She was free to place the money in trust for her children. Roberts and Kerpelman may question Total Health Care's statutory right to collect fees under the subrogation language of section 15–120, but neither the United States Constitution nor Article 24 of the Maryland Declaration of Rights interferes with the assertion of a section 15–120 subrogation claim.

## II.

Roberts and Kerpelman argue that Total Health Care did not have a valid subrogation claim. Total Health Care counters that its subrogation claim was valid and supported by the legal doctrines of subrogation and contract law.

■ The doctrine of subrogation allows for "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." *Finance Co. of Am. v. U.S.F. & G. Co.*, 277 Md. 177, 182, 353 A.2d 249 (1976); *see also Bachmann v. Glazer & Glazer, Inc.*, 316 Md. 405, 412, 559 A.2d 365 (1980) (stating that subrogation "is intended to provide relief against loss and damage to a meritorious creditor who has paid the debt of another"); *Rinn v. First Union Nat. Bank of Maryland*, 176 B.R. 401, 407 (D.Md.1995) (stating that "subrogation is the substitution of one person in the place of another with reference to a lawful claim or right"). Subrogation is founded upon the equitable powers of the court, *Bachmann*, 316 Md. at 412, 559 A.2d 365, but is recognized and enforced in both law and equity actions. *Gov't Employees Ins. v. Taylor*, 270 Md. 11, 20, 310 A.2d 49 (1973).

The policy underlying the subrogation doctrine is the desire to "prevent the party primarily liable on the debt from being unjustly enriched when someone pays his debt." *Bachmann*, 316 Md. at 412, 559 A.2d 365 (1989). Professor Williston characterized the doctrine of subrogation as follows:

> The object of subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one, who, in justice, equity, and good conscience, should pay it.

*Bachmann*, 316 Md. at 413, 559 A.2d 365 (quoting 10 Williston, *A Treatise on the Law of Contracts* § 1265, at 845 (3d ed.1967)).

■ The subrogee acquires all rights and remedies the creditor had against the debtor. *Bachmann*, 316 Md. at 413, 559 A.2d 365 (citing *Poe v. Phila. Casualty Co.*, 118 Md. 347, 352–353, 84 A. 476 (1912)). As the Supreme Court observed, "One who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation had not been made." *United States v. Munsey*

*Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947).

Maryland courts recognize three types of subrogation claims: (1) legal subrogation[10]; (2) conventional subrogation; and (3) statutory subrogation. *Bachmann,* 316 Md. at 413, 559 A.2d 365; *Finance Co. of Am.,* 277 Md. at 182, 353 A.2d 249. These three categories exist independently of each other. The nonexistence of one does not *per se* exclude a finding of the other.[11]

Both parties discussed in one form or another each of the three genuses of the subrogation doctrine. Because there is no need to address legal subrogation directly, we will divide our discussion into two parts; part A addressing Roberts and Kerpelman's statutory claim and part B dealing with conventional subrogation.

### A.

Roberts and Kerpelman insist that the Department had no right to assign its subrogation claim because section 15–120 does not specifically allow for the assignment of this right.

---

**10.** The Court of Appeals described legal subrogation as follows:

> Legal subrogation (as distinguished from conventional and statutory subrogation) arises by operation of law when there is a debt or obligation owed by one person which another person, who is neither a volunteer nor an intermeddler, pays or discharges under such circumstances as in equity entitles him to reimbursement. *Maryland Title Corp. v. Kosisky,* 245 Md. 13, 225 A.2d 47 (1966); *Finance Co. of Am. v. U.S.F. & G. Co.,* 277 Md. 177, 182, 353 A.2d 249 (1976).

Although we do not apply the doctrine of legal subrogation directly in this case, its overriding theme of equity and fairness is a component of all subrogation claims, whether statutory, conventional, or legal.

**11.** Some courts and treatises only recognize two forms of subrogation; conventional and legal. *E.g., Security Ins. Co. v. Mangan,* 250 Md. 241, 246, 242 A.2d 482 (1968) (quoting 50 Am.Jur. *Subrogation* § 3, at 679–680 (1944)); *Rinn v. First Union Nat. Bank of Maryland,* 176 B.R. 401, 407 (D.Md.1995). Statutory subrogation appears to be a modern development that nonetheless has been adopted in Maryland.

 Statutory subrogation, as its name suggests, arises by an act of the legislature that vests the right of subrogation with a party or category of parties. *Bachmann,* 316 Md. at 413, 559 A.2d 365. Section 15–120 creates a statutory right of subrogation in the Department. Total Health Care's right to subrogation, however, is not directly based on section 15–210, because the subsection does not expressly grant it this right. Instead, Total Health Care's right to enforce the subrogation claim is based on the derivative claim that the Department has a legal right to assign its statutory right to other parties.

 "In Maryland it has long been held that a chose in action may be validly assigned." *Medical Mutual v. Evans,* 330 Md. 1, 29, 622 A.2d 103 (1993) (citing *Adair v. Winchester,* 7 G. & J. 114, 117–118 (1835)). The right of assignment includes a chose in action based on tort or contract. *Summers v. Freishtat,* 274 Md. 404, 335 A.2d 89 (1975); *see also Hernandez v. Suburban Hosp. Assoc.,* Inc., 319 Md. 226, 234, 572 A.2d 144 (1990) (recognizing the general right to assign claims); *Crane Etc. Co. v. Terminal Etc. Co.,* 147 Md. 588, 598, 128 A. 280 (1925) (stating that as a general rule a party may assign all beneficial rights under a contract).

 The Department's authority to assign its subrogation claims is not adversely affected by section 15–120's silence on this point. The only way to limit an existing enforceable right statutorily is to have the legislature enact legislation specifically preventing use of that right. Section 15–120's silence, therefore, leaves the common law right of assignment unaffected. Moreover, Roberts and Kerpelman have made no argument that the Department's right to assign by contract its subrogation claim contravenes any express or implied public policy underpinning of the Program.

## B.

 Conventional subrogation arises by an express or implied agreement. *Bachmann,* 316 Md. at 413, 559 A.2d 365; *Security Ins. Co. v. Mangan,* 250 Md. 241, 246, 242 A.2d 482 (1967). Recovery under conventional subrogation is based on

contract law, but is subject to the principles of equity. *Bach-mann*, 316 Md. at 416, 559 A.2d 365. This genus of subrogation has two distinct species. The first, the older of the two, was described by the Court of Appeals as follows:

> It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the debtor so paid. The contract right of subrogation is somewhat broader than legal subrogation, for the right is granted irrespective of whether the payment was necessary for the protection of the person seeking subrogation.

*Security Ins. Co.*, 250 Md. at 246, 242 A.2d 482 (quoting 50 Am.Jur. *Subrogation* § 248, at 285–286 (1st ed. 1882)).

The second species of conventional subrogation involves cases where creditors assign the right of recovery of a debt to another. *Bachmann*, 316 Md. at 413, 559 A.2d 365. The Court of Appeals has noted that "assignment of the . . . right of recovery [gives] rise to conventional subrogation." *Id.* (quoting in part *Security Ins. Co.*, 250 Md. at 249, 242 A.2d 482). In this case, as discussed *supra*, the Department had a legal right to assign a right of recovery to private health organizations under section 15–120.

In order for Total Health Care to recover under a theory of conventional subrogation, it needed to prove: (1) that the Department contracted to assign the debt to Total Health Care; and (2) that Total Health Care paid for the medical services provided by Johns Hopkins. *See Bachmann*, 316 Md. at 417, 559 A.2d 365. In the case *sub judice*, the facts are not in dispute. The record establishes that the Department and Total Health Care entered into a contract assigning the right of subrogation under section 15–120. Additionally, Total Health Care paid $59,880 to Johns Hopkins for medical services provided for Roberts's children.[12]

---

12. Roberts and Kerpelman argue that Roberts does not need to pay Total Health Care because it had already received a negotiated per capita payment from the Department to provide health care to Program

▇▇ The final step requires this Court to balance the equities to determine if enforcement of Total Health Care's subrogation claim is justified. *Bachmann,* 316 Md. at 416, 559 A.2d 365; *Finance Co. of Am.,* 277 Md. at 185, 353 A.2d 249; *Maryland Trust Co. v. Poffenberger,* 156 Md. 200, 144 A. 249 (1929). In this case, Total Health Care paid $59,880 for the concededly necessary medical services for Roberts's children. Roberts and her children received a substantial settlement that would cover the medical expenses and still leave the children with a considerable amount of money.

Roberts, on the other hand, has no counterbalancing equitable argument. She and Kerpelman are essentially asking this Court to excuse her obligation to pay for medical services even though she has received a benefit and has the means to pay for this benefit. In this case, the scales of equity swing in the favor of Total Health Care. Equity does not operate to allow parties to avoid their financial responsibilities at the expense of others.

**JUDGMENT AFFIRMED.**

**APPELLANTS TO PAY COSTS.**

---

members, such as Roberts's children. Pursuant to this argument, any additional payments would constitute double collection for Total Health Care. It is enough to say that the record establishes clearly and unequivocally that the contract between the Department and Total Health establishes the per capita payment and the assignment of the subrogation right as the collective compensation for Total Health Care to provide medical services to Program recipients. The per capita payment does not serve as, nor was it ever intended to serve as, full compensation from the Department for expenses paid by private health organizations.