**Karren Y. HILL, Plaintiff**

v.

**PEOPLESOFT USA, INC., Defendant**

**No. RWT 04–CV–237.**

United States District Court,
D. Maryland.

Aug. 31, 2004.

pursuant to 42 U.S.C. § 1981, as amended, and the Civil Rights Act of 1991, as amended.

Pending before the Court are Defendant's Motion to Dismiss, or in the Alternative, to Stay Proceedings and to Compel Arbitration, and Plaintiff's Cross–Motions for Summary Judgment (1) to Confirm the Finding of Default by the American Arbitration Association and/or (2) on the issue of the unenforceability of the Agreements to Arbitrate, or in the Alternative for a Jury Trial Pursuant to 9 U.S.C. § 4.[1] For the reasons that follow, both motions will be denied.

## BACKGROUND

PeopleSoft provides computer software for coordinating back-office applications and databases. Compl. ¶ 5. In August of 2001, PeopleSoft interviewed Hill for the position of Customer Relationship Management ("CRM") Staff Product Consultant. Pl.'s Opp. & Cross–Mot. Ex. 1. Following the interview, PeopleSoft offered Hill the job in a letter dated August 17, 2001 (herein "the offer letter"). The offer letter stated that the "enclosed documents contain the entire terms and conditions of your job offer." *Id.* In addition to explaining the proposed compensation package, the offer letter described the "enclosed documents," as follows:

> Also enclosed for your review prior to accepting this offer are copies of the PeopleSoft standard Employee Proprietary Information Agreement, Acknowledgment of At–Will Employment,

Patrick J Massari, Law Office of Patrick J. Massari, Washington, DC, for Plaintiff.

Daniel H. Handman, Shulman, Rogers, Gandal, Pordy and Ecker PA, Rockville, MD, for Defendant.

### *MEMORANDUM OPINION*

TITUS, District Judge.

Plaintiff, Karren Hill, brings this action against PeopleSoft USA, Inc. ("PeopleSoft") alleging sexual harassment (Count I), hostile work environment (Count II), retaliation (Count III) and discrimination based on race (Count IV) pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, 42 U.S.C. § 1981(a), as amended, and the Civil Rights Act of 1991, as amended, and discrimination based on race (Count V)

---

**1.** Hill's cross-motion will be denied as it would be inefficient for the Court to consider arguments that are moot in light of the Court's finding that Hill's claim may proceed in this Court. Likewise, the following motions will also, by separate order, be denied: Motion for Limited Discovery Pursuant to Federal Rules of Civil Procedure 12(b) and 56(f), or in the Alternative, in the Event the Court Orders a Jury Trial Pursuant to 9 U.S.C. § 4 [Paper No. 8], Motion in the Alternative to Certify Questions of Law Pursuant to the Maryland Uniform Certification of Questions of Law and Maryland Rule 8–305 [Paper No. 10] and Combined Motion for Continuance and Issuance of Letter of Request and Memorandum of Law in Support Thereof [Paper No. 15].

Agreement to Arbitrate, and Third Party Information Agreement that we require all new employee to carefully review, sign and return with this signed letter. By the terms of such agreements, you are also representing that you are able to work for PeopleSoft without restriction. A copy of the Internal Dispute Solution program and policy and current program details are enclosed and is incorporated by reference.

By signing this letter as set forth below, you indicate your acceptance of all of the terms of Employee Proprietary Information Agreement, Acknowledgment of At–Will Employment, Agreement to Arbitrate, Third Party Information Agreement and the Internal Dispute Solution program and policy. This letter and enclosed documents contain the entire terms and conditions of your job offer. The terms of your offer may be changed, amended, or superceded only by an agreement in writing signed by you and an officer of PeopleSoft.

\* \* \* \* \* \*

To indicate your acceptance of this offer, in addition to the background documents above, please *return the original signed offer letter and original signed Acknowledgment of At–Will Employment, Agreement to Arbitrate, Employee Proprietary Information Agreement, and Third Party Information Agreement. Your signature on this offer letter and each of the aforementioned agreements must be completed and returned prior to your start date at PeopleSoft. Employment with PeopleSoft is contingent upon receipt of each of these signed documents.*

Pl.'s Opp. & Cross–Mot. Ex. 1 (emphasis in original). Hill signed the offer letter and the Agreement to Arbitrate. *See* Pl.'s Opp. & Cross–Mot. Ex. 1; Def.'s Mot.

Ex. A. She began working for PeopleSoft on August 27, 2001.

The Internal Dispute Solution ("IDS") program and policy referenced in the offer letter describes a three component process for resolving employment disputes: open-door, Employee Relations and arbitration. Pl.'s Opp. & Cross–Mot. Ex. 2. The IDS program and policy provides that it is "subject to change without notice" and that "PeopleSoft reserves the right to make changes and adjustments to the IDS program." *See* Pl.'s Opp. & Cross–Mot. Ex. 2 at introductory page and 11. The Agreement to Arbitrate referenced in the offer letter provides:

> The parties to this agreement agree that all disputes arising out of the PeopleSoft/employee relationship and/or termination of your employment with [PeopleSoft] which we are unable to resolve through direct discussion or mediation, regardless of the kind or type of dispute shall be submitted exclusively to final and binding arbitration pursuant to the provisions of the Federal Arbitration Act, . . . .

Def.'s Mot. Ex. A. The Agreement to Arbitrate also describes the process for requesting arbitration, the arbitrator selection, the arbitrator's authority, the pleadings and discovery allowed in arbitration, the hearing procedure and information concerning fees and costs. *Id.*

In December of 2002, Hill made an oral claim of harassment and retaliation to her direct supervisor. Compl. ¶ 25. On March 14, 2003, she filed a complaint with PeopleSoft's Human Resources Department in Bethesda, alleging sexual harassment, sexual discrimination, hostile work environment, retaliation and racial discrimination. *Id.* ¶ 42. An investigation by outside counsel concluded with the issuance of a written report on July 29, 2003. *Id.* Following the report, Hill's counsel wrote

two letters to PeopleSoft concerning her employment status. Pl.'s Mot. & Cross–Mot. at 4 ¶ 14. PeopleSoft did not respond to the letters from Hill's attorney.

On December 9, 2003, Hill filed a Demand for Arbitration with the American Arbitration Association (herein the "AAA"). Hill amended her arbitration claim on December 11, 2003. Although Hill paid her portion of the filing fee to the AAA, PeopleSoft did not pay its portion. In a letter dated December 11, 2003, the AAA advised the parties that "[a]bsent receipt of the balance of the filing fee by [December 23, 2003], the Association will return all documents submitted and not consider this matter properly filed." *Id.* When PeopleSoft did not pay its portion of the filing fee, in a letter dated January 6, 2004 the AAA "declined to administer the case." [2] Def.'s Reply and Opp. Ex A.

Shortly thereafter, Hill filed suit in this Court on January 28, 2004. On February 18, 2004, PeopleSoft responded by moving for dismissal of Hill's Complaint and to compel arbitration of her claims in accordance with the Agreement to Arbitrate signed by Hill when she began her employment with PeopleSoft. In opposition, Hill makes three arguments. First, Hill argues that PeopleSoft's failure to respond to the arbitration "demand" or to pay the filing fees to the AAA constituted a waiver and/or default of arbitration. Second, relying on *Cheek v. United Healthcare of the Mid–Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656 (2003), Hill argues that the Agreement to Arbitrate is unenforceable for lack of consideration because PeopleSoft's promise to arbitrate is illusory. Third, Hill argues that the Agreement to Arbitrate is procedurally and substantively unconscionable. For the reasons that follow, the Court concludes that the Agreement to Arbitrate is unenforceable for lack of consideration because PeopleSoft's promise to arbitrate is illusory. Consequently, the Court will not address Hill's alternative arguments.[3]

## DISCUSSION

### I.

■■■ Under the Federal Arbitration Act ("FAA"), a pre-dispute agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Federal policy favors arbitration agreements and requires that courts "rigorously enforce" them. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (citations omitted). Nonetheless, a prerequisite to compelling arbitration is the existence of a valid agreement to arbitrate. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–04 (4th Cir.2002). To determine whether an agreement to arbitrate is valid, courts look to general state contract law. *Int'l Paper Co. v. Schwabedissen Maschinen & Anla-*

---

**2.** The AAA's letter stated:

[S]ince the company has not complied with our request to pay the requisite administrative fees in accordance with the employer-promulgated plan fee schedule, we must decline to administer any other employment disputes involving [PeopleSoft]. We request that the business remove the AAA name from its arbitration clause so that there is no confusion to the company's employees regarding our decision.

Def.'s Reply and Opp. Ex A

**3.** While the Court does not reach Hill's alternative argument concerning PeopleSoft's waiver and/or default of arbitration, the belated attempt by PeopleSoft to enforce the protections of the arbitration agreement after it ignored Hill's demand and communications from the American Arbitration Association is perplexing and certainly generates a serious issue as to waiver.

*gen GMBH*, 206 F.3d 411, 417 n. 4 (4th Cir.2000).

## II.

■ Relying on principles of *lex loci contractus* and *renvoi*, Hill maintains that Maryland law applies in determining the validity and enforceability of the Agreement to Arbitrate. Because PeopleSoft has not challenged Hill's analysis on this point, it is unnecessary for the Court to belabor this issue.[4] In brief, the absence of a forum selection clause in the Agreement to Arbitrate or the employment contract requires the Court to follow Maryland's general rule of *lex loci contractus* by looking to the law of the place where the contract was made to determine its meaning and operation. *Rouse Co. v. Fed. Ins. Co.*, 991 F.Supp. 460, 462–63 (D.Md. 1998) (citing *American Motorists Ins. Co., v. ARTRA Group, Inc.*, 338 Md. 560, 570, 659 A.2d 1295 (1995)). Under the *lex loci* principle, a contract is "made" where the last act necessary for its formation is performed. *Id.* (citations omitted).

■ Under *renvoi* principles Maryland courts apply Maryland substantive law to contracts made in a foreign state, in spite of the *lex loci contractus* rule, when: (1) Maryland has the most significant relationship, or, at least, a substantial relationship with respect to the contract issue presented; and (2) the state where the contract was entered into would not apply its own substantive law, but instead would apply Maryland substantive law to the issue before the Court. *See Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 681, 698 A.2d 1167 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997).

■ ■Hill signed the offer letter and Agreement to Arbitrate in Virginia, where she lived at the time. *See* Pl.'s Opp. & Cross–Mot. at 20. Under *renvoi* analysis, however, Maryland substantive law applies to the interpretation and construction of the offer letter and incorporated documents. In satisfaction of the first prong of *renvoi* analysis, the Court concludes that Maryland has the most significant relationship to the issue presented. During the relevant time period, Hill worked primarily in Maryland, and most of the alleged discriminatory acts occurred in People-Soft's Bethesda office. *See* Compl. ¶¶ 7, 13, 14, 22, 26, 29, 36. Hill now resides in Maryland. *Id.* ¶ 3. The second *renvoi* prong is satisfied because under Virginia law "the *lex loci* will govern as to all matters going to the basis of the right of action itself." *Jones v. R.S. Jones and Assocs., Inc.*, 246 Va. 3, 431 S.E.2d 33, 34 (1993); *Hansen v. Stanley Martin Cos.*, 266 Va. 345, 585 S.E.2d 567, 571–72 (2003) (breach of contract). Thus, where, as here, the employment contract was largely performed in Maryland and the alleged harassment occurred in Maryland, a Virginia court would apply Maryland law.

## III.

■ Under Maryland law, an agreement to arbitrate that is subject to unilateral modification or revocation is illusory and unenforceable. *Cheek v. United Healthcare of the Mid–Atlantic*, 378 Md. 139, 144, 835 A.2d 656 (2003). In *Cheek*, the Court of Appeals did not enforce an arbitration agreement where the employee handbook's summary of the arbitration policy expressed that the employer "reserve[d] the right to alter, amend, modify, or revoke

4. In addressing Hill's alternative claim that the Agreement to Arbitrate is unconscionable, PeopleSoft suggests that unconscionability is analyzed under federal common law under the FAA, not state law. *See* Def.'s Reply at 15 n. 11. As noted earlier, however, the Court does not reach Hill's argument that the Agreement to Arbitrate is unconscionable.

the [arbitration policy] at its sole and absolute discretion at any time with or without notice." *Id.* at 142—43, 835 A.2d 656. The employee in that case signed an acknowledgment form stating that he had received and reviewed the Internal Dispute Resolution/Employment Arbitration Policy. *Id.* at 143, 835 A.2d 656. The acknowledgment form also stated:

> I understand that UnitedHealth Group Employment Arbitration Policy is a binding contract between UnitedHealth Group and me to resolve all employment-related disputes which are based on a legal claim through final and binding arbitration. I agree to submit all employment-related disputes based on legal claim [sic] to arbitration under UnitedHealth Group's policy.

*Id.* The acknowledgment form signed by Cheek did not contain a provision allowing the employer to unilaterally amend the arbitration policy. However, after reviewing the requirement of consideration in contract formation and illusory promises, the court reasoned that the "fact that [the employer in its employee handbook] 'reserves the right to alter, amend, modify, or revoke the [Arbitration] Policy at its sole and absolute discretion at any time with or without notice' creates no real promise, and therefore, insufficient consideration to support an enforceable agreement to arbitrate." *Id.* at 149, 835 A.2d 656 (alterations in original).

■ Applying *Cheek*, the question for the Court in this case is whether PeopleSoft had the right to modify unilaterally the Agreement to Arbitrate. Hill urges that the Agreement to Arbitrate is subject to PeopleSoft's unilateral modification provisions as expressed in the IDS program and policy. PeopleSoft maintains that while it reserves the right to modify the IDS program and policy, the Agreement to Arbitrate is an individual, written agreement, which PeopleSoft does "not reserve the right to modify." Def.'s Reply at 10.

■ The proper starting point for the Court's analysis is the offer letter, which contains the "entire terms and conditions of [the] job offer," and expressly incorporates the Agreement to Arbitrate and the IDS program and policy. Pl.'s Opp. & Cross–Mot. Ex. 1. Specifically, the offer letter provides that "by signing this letter . . ., you indicate your acceptance of all of the terms of . . . Agreement to Arbitrate . . . and the Internal Dispute Solution program and policy." *Id.* Under the unambiguous language of the offer letter, Hill is bound by the terms of the IDS program and policy, as well as the Agreement to Arbitrate. Thus, the Agreement to Arbitrate and the IDS program and policy should be read and construed together. *Cf. Bachmann v. Glazer & Glazer, Inc.,* 316 Md. 405, 415, 559 A.2d 365 (1989) ("When a contract is comprised of more than one document, the writings are to be read and construed together as if they were one instrument.").

Further support for construing these documents together is the fact that arbitration is a vital component of the IDS program and policy, open-door and Employee Relations (including mediation) being the precursor steps to arbitration. *See* Pl.'s Opp. & Cross–Mot. Ex. 2. Specifically, the Agreement to Arbitrate provides, in part, "[t]he parties to this Agreement agree that all disputes arising out of the PeopleSoft/employee relationship . . . which we are unable to resolve through *direct discussion or mediation,* regardless of the kind or type of dispute shall be submitted exclusively to final and binding arbitration . . . ." *Id.* (emphasis added). The IDS program and policy explains in a section titled "Common Questions and Answers" that IDS generally requires the

employee to exhaust each dispute resolution component. *Id.*

The express language of the IDS program and policy gives PeopleSoft the right to modify its dispute resolution program. The "summary" section of the eleven-page IDS program and policy document provides that "[a]s with any company policy, PeopleSoft reserves the right to make changes and adjustments to the IDS program." Pl.'s Opp. & Cross–Mot. Ex. 2 at 11. Such changes can be effected "without notice." *Id.* (introductory page). The fact that PeopleSoft reserves the right to change its IDS policy, of which arbitration is a component, therefore creates no real promise to arbitrate. Accordingly, the Court concludes that the Arbitration Agreement lacks sufficient consideration to constitute an enforceable agreement.

The Court also agrees that the circumstances in *Cheek*, which establishes the principles this Court must follow in determining the validity of the contract, are indistinguishable from the instant case. The acknowledgment form signed by Cheek contained a discrete agreement to arbitrate, which like the Agreement to Arbitrate signed by Hill, did not contain the forbidden illusory language. As in this case, the improper language in *Cheek* was contained in a different document, the employee handbook.

In urging the Court to resolve any ambiguity as to the validity of the Agreement to Arbitrate in favor of arbitration, People-Soft relies on *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 378–79 (4th Cir.1998) and *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272 (4th Cir.1997). These cases, however, are not inconsistent with the Court's finding of insufficient consideration under the facts presented here where the mutual obligation to arbitrate is effectively abrogated by the IDS program and policy. *O'Neil* and *Circuit City* addressed whether arbitration agreements required an "affirmative obligation on the part of the employer to adhere to the arbitration process." *Circuit City*, 148 F.3d at 378. Rejecting the argument that the absence of any affirmative obligation on the part of the employer to adhere to the arbitration process was fatal to its enforcement, the *O'Neil* court stated:

> Here the agreement to be bound by arbitration was a mutual one. The contract to arbitrate was proffered by the employer. Such a proffer clearly implies that both the employer and the employee would be bound by the arbitration process. If an employer asks an employee to submit to binding arbitration, it cannot then turn around and slip out of the arbitration process itself.

*O'Neil,* 115 F.3d at 274. *O'Neil*, nonetheless, expressed concern with an employer's ability to "slip out of the arbitration process." *Id. O'Neil* recognized that the agreement in that case did not improperly allow the employer to ignore the results of arbitration. *O'Neil*, 115 F.3d at 275.

*O'Neil* distinguished the agreement at issue there from that in *Hull v. Norcom, Inc.*, 750 F.2d 1547 (11th Cir.1985). *Id.* In *Hull*, the court found the arbitration provision contained in Hull's employment contract illusory, where a separate provision of the employment contract reserved for the employer "a unilateral right to a judicial forum in the event of the breach by [the employee] of the terms and conditions of th[e] agreement." *Hull*, 750 F.2d at 1550 (internal quotations omitted). As in *Hull*, the Agreement to Arbitrate in this case appears on its face to compel both parties to arbitration, yet the IDS program and policy, which formed part of the terms and conditions of Hill's offer, reserved to PeopleSoft the right to "make changes and adjustments to the IDS program[,]" of which arbitration was a compo-

nent. *See* Pl.'s Opp. & Cross–Mot. Ex. 2 at 11.

## CONCLUSION

For the reasons stated above, under Maryland law, which the Court must apply in determining the validity of the parties' Agreement to Arbitrate, such agreement is unenforceable as illusory. Therefore, Defendant's Motion to Dismiss, or in the Alternative, to Stay Proceedings and to Compel Arbitration, by separate order, will be DENIED.

### *ORDER*

Upon consideration of Defendant's Motion to Dismiss, or in the Alternative, to Stay Proceedings and to Compel Arbitration [Paper No. 4], Plaintiff's Cross–Motions for Summary Judgment (1) to Confirm the Finding of Default by the American Arbitration Association and/or (2) on the issue of the unenforceability of the Agreements to Arbitrate, or in the Alternative for a Jury Trial Pursuant to 9 U.S.C. § 4 [Paper No. 6], the oppositions and replies thereto, the arguments presented by counsel at a hearing held before the undersigned on May 17, 2004, and for the reasons stated in the Memorandum Opinion filed in conjunction with this Order, it is this 31st day of August, 2004, by the United States District Court for the District of Maryland,

ORDERED, that Defendant's Motion to Dismiss, or in the Alternative, to Stay Proceedings and to Compel Arbitration [Paper No. 4] is DENIED; and it is further

ORDERED, that Plaintiff's Cross–Motions for Summary Judgment (1) to Confirm the Finding of Default by the American Arbitration Association and/or (2) on the issue of the unenforceability of the Agreements to Arbitrate, or in the Alternative for a Jury Trial Pursuant to 9 U.S.C. § 4 [Paper No. 6] is DENIED; and it is further

ORDERED, that Plaintiff Karren Y. Hill's Motion for Limited Discovery Pursuant to Federal Rules of Civil Procedure 12(b) and 56(f), or in the Alternative, in the Event the Court Orders a Jury Trial Pursuant to 9 U.S.C. § 4 [Paper No. 8] is DENIED; and it is further

ORDERED, that Plaintiff's Motion in the Alternative to Certify Questions of Law Pursuant to the Maryland Uniform Certification of Questions of Law and Maryland Rule 8–305 [Paper No. 10] is DENIED; and it is further

ORDERED, that Plaintiff's Combined Motion for Continuance and Issuance of Letter of Request and Memorandum of Law in Support Thereof [Paper No. 15] is DENIED.