PRESENT: ALL THE JUSTICES

MICHAEL G. HANSEN, ET AL.

OPINION BY
v. Record No. 022591      JUSTICE G. STEVEN AGEE
SEPTEMBER 12, 2003
STANLEY MARTIN COMPANIES, INC.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
R. Terrence Ney, Judge

Michael G. Hansen and Nancy E. Randa (the "Homeowners")
appeal the judgment of the Fairfax County Circuit Court granting
summary judgment to Stanley Martin Companies, Inc. ("Stanley
Martin") on all claims against it.  For the reasons discussed
below, we will affirm the judgment of the trial court in part,
and reverse it in part, and the case will be remanded.

I.   BACKGROUND AND MATERIAL PROCEEDINGS BELOW

On February 22, 1997, the Homeowners entered into a sales
contract for the construction of a new home with Stanley Martin,
the builder.  The Homeowners claim that, prior to executing the
sales contract, Stanley Martin's sales agent told them that the
stucco cladding to be used on their home would need "little to
no maintenance," was not the type of stucco cladding used in
North Carolina, and would not have the performance problems
found on some North Carolina stucco homes.

The home, located in the Potomac Regency subdivision in
Potomac, Maryland, was constructed using a synthetic stucco
product known as "Exterior Insulation and Finish System," or

EIFS.  Although the Homeowners anticipated that the house would be built with "conventional" or "real" stucco, Stanley Martin informed them prior to execution of the sales contract that the home would be clad with an artificial stucco product.  Stanley Martin substantially completed construction of the home by August 1997, and the closing for transfer of title to the Homeowners occurred on August 29, 1997.

The closing documents confirmed in writing that the cladding on the home was EIFS and not conventional stucco.  Other closing documents included a warranty book, which the Homeowners received and read, that informed them they were required to inspect the home every three months for water infiltration of the EIFS and that they were responsible for maintaining the caulk seal around the home.  The Homeowners felt they had been misled because the home contained EIFS that required regular maintenance.

On November 15, 1997, the Homeowners submitted a "60 Day Warranty Service Request" form to Stanley Martin.  Among the five pages of items listed by the Homeowners as requiring maintenance or not having been completed prior to closing ("punch list" type items) was an entry for "baseboard discoloration under window in master bathroom."  Stanley Martin attempted to repair the leak under the window on at least three occasions.  In the months after the closing, the Homeowners

2

repeatedly requested that Stanley Martin give them a booklet, promised at closing, containing information on maintenance of the EIFS.

On November 7, 1998, the Homeowners read an article in the Washington Post newspaper discussing water leakage problems associated with synthetic stucco which featured Stanley Martin's response to those problems on houses in the Potomac Regency neighborhood. The Homeowners "found certain information in the Washington Post article . . . disturbing" including this passage: "The building industry first realized there was a problem with synthetic stucco in 1994 and 1995, when hundreds of almost-new houses in North Carolina turned out to have serious water damage."

In October 1998, Stanley Martin inspected and made repairs to the EIFS on the Homeowners' home. Thereafter, the Homeowners received a report from an EIFS consultant Stanley Martin hired to inspect houses it constructed with artificial stucco. The report is dated November 16, 1998, and states that Stanley Martin has "repaired noted defects and moisture related problems."

In 1999, the Homeowners learned that other homeowners in their neighborhood were experiencing problems with EIFS. On October 29, 1999, the Homeowners hired their own consultant, Stucco Pro, to inspect the EIFS on their home. The Homeowners

contend they were unaware of the problems caused by the EIFS used by Stanley Martin on their home until they received the Stucco Pro report.  In early 2000, the Homeowners attended a meeting with other homeowners and an officer of Stanley Martin to discuss the EIFS problems.  After the meeting, the Homeowners and others affected by the EIFS problems decided to communicate with Stanley Martin through an attorney.

On November 17, 2000, the Homeowners filed a motion for judgment in the Circuit Court of Fairfax County asserting five causes of action against Stanley Martin in separate counts for breach of contract, fraud, negligence, negligent misrepresentation, and violation of the Maryland Consumer Protection Act ("MCPA") (Md. Code Ann., Commercial Law § 13-301 et seq.).  On July 25, 2002, Stanley Martin filed a motion for summary judgment alleging that the counts for breach of contract, fraud, negligent misrepresentation, and violation of the MCPA were barred by the applicable statutes of limitations.[1] The trial court granted the motion by order dated August 9,

---

[1] The parties apparently agree that the Homeowners' cause of action for negligence was dismissed with prejudice on Stanley Martin's demurrer, though no order granting the demurrer appears in the record.  In any event, that count was not made the subject of an assignment of error.

2002, and dismissed the Homeowners' suit with prejudice.[2]  We granted the Homeowners this appeal.

## II.  STANDARD OF REVIEW

A trial court may appropriately grant summary judgment in cases where no material facts are genuinely in dispute.  Rule 3:18; Thurmond v. Prince William Prof'l Baseball Club, Inc., 265 Va. 59, 64, 574 S.E.2d 246, 250 (2003); Majorana v. Crown Cent. Petroleum Corp., 260 Va. 521, 525, 539 S.E.2d 426, 428 (2000).  However, "the decision to grant a motion for summary judgment is

---

[2] In granting Stanley Martin's motion for summary judgment, the trial court opined from the bench as follows:

> [T]hat by the date of settlement on their house  namely, October [sic] 29, 1997 and certainly in no event later than November 7, 1998 — they knew they had not gotten stucco, but had gotten the artificial stucco, EIFS; and that this was the same EIFS that had caused problems with regard to other houses in other states.
> The statute of limitations in Maryland for filing the fraud based claims or negligence based claims is two years, and this suit was filed more than two years from either of those dates.
> Insofar as the breach of contract claim is concerned, it is clear that, even adopting the Maryland discovery rule, the plaintiffs knew or should have known no later than November 15, 1997, at the time their 60 day warranty list was completed, that the product that they were unhappy with receiving on August 29, 1997 was, in fact, failing to perform as they had believed either it should have if it was not the, quote, North Carolina EIFS, unquote, or certainly not real stucco.

a drastic remedy."  Slone v. General Motors Corporation, 249 Va. 520, 522, 457 S.E.2d 51, 52 (1995) (quoting Turner v. Lotts, 244 Va. 554, 556, 422 S.E.2d 765, 766 (1992)).  In the case at bar our review of the record is limited to the parties' pleadings, requests for admission, and interrogatories.[3]  Therefore, we will accept as true "those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason."  Dudas v. Glenwood Golf Club, Inc., 261 Va. 133, 136, 540 S.E.2d 129, 131 (2001) (quoting Dickerson v. Fatehi, 253 Va. 324, 327, 484 S.E.2d 880, 882 (1997)); see also Carson v. LeBlanc, 245 Va. 135, 139-40, 427 S.E.2d 189, 192 (1993).

### III.  Analysis

The focus in this case is the application of the statutes of limitations to the Homeowners' causes of action pled in their motion for judgment.  The parties are in agreement as to the applicable substantive and procedural law which governs our decision with the exception of the MCPA count.  Under the sales contract, Maryland law governs the "interpretation, validity and construction of the terms and conditions of the contract";

---

[3] In its brief to this Court, Stanley Martin asserts that the Homeowners improperly included deposition transcripts and other documents in the Joint Appendix.  Because our decision in this case is not dependent on that material, we need not address Stanley Martin's objection in this regard.

6

however, matters of procedure are governed by the situs of the proceedings, so the Virginia statutes of limitation apply. See Jones v. R. S. Jones & Assocs., 246 Va. 3, 5, 431 S.E.2d 33, 34 (1993) (stating the well-settled rule that "the *lex loci* will govern as to all matters going to the basis of the right of action itself, while the *lex fori* controls all that is connected merely with the remedy") (quoting Maryland v. Coard, 175 Va. 571, 580-81, 9 S.E.2d 454, 458 (1940)). With these principles in mind, we examine the trial court's rulings as to each of the Homeowners' causes of action.

## A. Breach of Contract

The Homeowners make alternative claims to establish a breach of contract. First, they allege the sales contract was breached because it required the house be constructed with conventional stucco instead of EIFS. Second, the Homeowners allege Stanley Martin failed to install the EIFS in accordance with the building code as the contract required.

Code § 8.01-246(2) establishes a five-year statute of limitations for actions under a written contract in Virginia. The Homeowners' motion for judgment would be timely under this statute; however, Code § 8.01-247 limits actions on contracts governed by the law of another state to the limitations period of that state if its time limit is more restrictive than Virginia's. Under Maryland law, a contract action must be

7

brought "within three years from the date it accrues."  Md. Code Ann., Courts and Judicial Proceedings § 5-101 (2002). Accordingly, the shorter three-year Maryland statute of limitations applies to the Homeowners' breach of contract claims.

While a breach of contract claim under Code § 8.01-230 is deemed to accrue "when the breach of contract occurs", Maryland law deems the claim to accrue under a discovery rule "when the contract is breached and when the breach was or should have been discovered."  Poffenberger v. Risser, 431 A.2d 677, 680 (Md. 1981).  As required by Code § 8.01-247, we apply Maryland's three-year statute of limitations and its discovery rule to determine when the statute of limitations commences to run on the breach of contract claims.  Further, the effective discovery date under Maryland law is that date upon which, in the exercise of due diligence, there was "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued."  Poffenberger, 431 A.2d at 681.

Using these legal yardsticks, we measure each of the Homeowners' breach of contract claims to determine whether any material facts were genuinely in dispute concerning the issues upon which the trial court granted summary judgment.

1.  Construction with conventional stucco.

Entry of summary judgment was clearly correct on this portion of the Homeowners' breach of contract claim. The Homeowners admit they knew that the house was to be clad with EIFS when they signed the contract of sale on February 22, 1997, almost three years and eight months before the motion for judgment was filed. Moreover, the Homeowners admit they received notice in writing at closing on August 29, 1997, that the house was clad with EIFS and not conventional stucco, still over three years before the motion for judgment was filed. Under these admitted facts, no genuine issue of material fact was in dispute that the Homeowners' claim for contractual entitlement to conventional stucco accrued more than three years before November 17, 2000. Therefore, the Homeowners failed to timely file their motion for judgment on these grounds and we will affirm the trial court's grant of summary judgment as to this claim.

2.  Failure to Comply with the Building Code.

The Homeowners' also allege a breach of contract by asserting that Stanley Martin failed to install the EIFS, sealants, windows and flashing in conformity with the applicable building code. The trial court apparently ruled this claim accrued as of November 15, 1997, the date of the sixty-day warranty list submitted by the Homeowners reflecting baseboard

9

discoloration under the master bathroom window.  Under the trial court's analysis, the three-year statute of limitations period expired on November 15, 2000, two days before the Homeowners filed their motion for judgment.

In the five pages of items the Homeowners enumerated for repair or completion in the warranty list is the entry: "Baseboard discoloration under window in master bathroom."  No further information elaborating on this item appears in the record.  Neither the trial court nor this Court knows whether the discoloration was a one-inch spot or a three-foot stain.  No indication is given in the record as to whether the cause of the discoloration was defective EIFS, a cracked window, or if the Homeowners left the window open during a rainstorm.  For summary judgment purposes, our review is limited to the record for a determination whether reasonable persons could differ regarding a genuine issue of material fact.  Whether this single notation created a due diligence requirement upon the Homeowners is an issue of fact that remains unresolved.

We hold that there is simply insufficient evidence in the record to adjudge, as a matter of law, that no material fact remains in dispute as to whether the Homeowners were, or should have been, on notice of a building code violation by virtue of a vague description of a single leak of unknown size and duration.  The record, at this point in the proceedings, does not contain

evidence which conclusively settles whether the single baseboard discoloration had any causal connection to the alleged building code violation. While evidence, yet to be adduced, may show that the Homeowners, in the exercise of due diligence, should have been put on notice to investigate the cause of the baseboard discoloration, reasonable persons could disagree over whether the limited facts in the record reach that threshold. In such a circumstance, summary judgment does not lie since the issue is properly one for resolution by the trier of fact upon the taking of evidence. "[Rule 3:18] was adopted to provide trial courts with authority to bring litigation to an end at an early stage . . . but it does not substitute a new method of trial where an issue of fact exists." Turner v. Lotts, 244 Va. 554, 557, 422 S.E.2d 765, 766-67 (1992) (quoting Leslie v. Nitz, 212 Va. 480, 481, 184 S.E.2d 755, 756 (1971)).

Accordingly, we hold that the trial court erred in granting summary judgment as to this portion of the breach of contract claim.

B. Fraud and Negligent Misrepresentation

The Homeowners' motion for judgment contains counts of fraud and negligent misrepresentation on four identical grounds:

      a. The exterior of the house would be clad with "stucco" (claim "a");

b.  That the cladding used on Plaintiffs' home would not have the performance problems experienced by homes in North Carolina since the problems in North Carolina were due to weather and improper installations (claim "b");

c.  That the stucco to be utilized on the [Homeowners'] house was not the same as that used in North Carolina (claim "c");

d.  That the cladding of the home would need little to no maintenance (claim "d").

We consider the fraud and negligent misrepresentation counts together because our ratio decidendi is the same in resolving the application of summary judgment.

Since both counts sound in fraud,[4] the two-year statute of limitations of Code § 8.01-243(A) applies and begins to run from the date the fraud or negligent misrepresentation "is discovered or by the exercise of due diligence reasonably should have been discovered."  Code § 8.01-249(1).  We, therefore, review the trial court's grant of summary judgment to determine whether a genuine issue of material fact remained in dispute as to whether the statute of limitations began to run before November 17,

---

[4] Negligent misrepresentation is the essence of a claim for constructive fraud in Virginia.  See e.g., Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 559, 507 S.E.2d 344, 347 (1998).

1998, two years before the plaintiffs filed their motion for judgment.

1.  Failure to clad the home with stucco: Claim "a".

For the reasons previously explained regarding the breach of contract claim asserting a right to a home clad with conventional stucco, we hold that the trial court was also correct in granting summary judgment under the fraud and negligent misrepresentation counts as to claim "a".  The statute of limitations accrued no later than the closing date, August 29, 1997, which means the limitation period expired by August 29, 1999, over a year before the Homeowners filed suit.  We will affirm the grant of summary judgment as to claim "a" of both counts.

2.  No Maintenance:  Claim "d".

We also hold that the trial court correctly granted summary judgment as to claim "d" in both counts alleging representations that the cladding of the home would need little or no maintenance.  At the August 29, 1997 closing, over three years before their motion for judgment was filed, the Homeowners admit they received the following written warranty notice:

> It is imperative that the homeowner check the exterior of the home every three months to assure that water cannot infiltrate the house and get behind the E.I.F.S.  The homeowner is responsible for maintaining the caulk seal around all the entire house, including all windows, doors, etc.

The Homeowners admit they felt misled about the necessary level of maintenance which had been represented to them when they received this information. It is thus clear in the record that no genuine issue of fact remained to be determined on the issue whether the Homeowners knew, as of August 29, 1997, that they were required to perform a high level of maintenance. The Homeowners' failure to act within two years of that date, by August 29, 1999, forecloses a claim against Stanley Martin on the basis of claim "d" in both counts. We will approve the grant of summary judgment as to claim "d" of both counts.

### 3. North Carolina Representations: Claims "b" and "c".

The Homeowners allege in claims "b" and "c" that Stanley Martin represented that the stucco on their house was not the type used in North Carolina and would not have the performance problems which had been experienced there. The trial court granted summary judgment on these claims, apparently finding that the statute of limitations began to run on November 7, 1998, the date the Homeowners read the Washington Post article. Under this analysis, the Homeowners were required to file their motion for judgment by November 7, 2000, ten days before suit was actually filed in this case. We disagree with the trial court's conclusion.

The Washington Post article informed the Homeowners that Stanley Martin, their builder, was inspecting and repairing homes it had constructed in their area which were clad with synthetic stucco. The newspaper article noted that synthetic stucco was usually referred to as EIFS, and recounted the fact that houses built with EIFS in North Carolina had many water intrusion problems. The article identified at least two types of EIFS: barrier EIFS, which apparently has water intrusion problems; and drainable EIFS which apparently does not have such problems. The newspaper story did not identify the type of EIFS used by Stanley Martin, the type used on the homes in the Homeowners' neighborhood or the type used on their house. The article did not indicate whether Stanley Martin made representations that its EIFS was the same as the North Carolina EIFS or whether the problems experienced by Stanley Martin's homes were the same problems found in North Carolina homes clad with synthetic stucco.

While the Washington Post article is probative, we cannot say, as a matter of law, that it put the Homeowners on actual or implied notice that the information they allege Stanley Martin represented to them: that it did not use the type of stucco used in North Carolina and that the stucco they did have would not have the North Carolina problems — was false. The Washington Post article raised questions, but we cannot say that reasonable

15

persons would not disagree about the conclusions to be drawn from it. While some reasonable persons might reach the conclusion advanced by Stanley Martin, and accepted by the trial court, it is not unreasonable to conclude otherwise. Nothing in the Washington Post article identifies the cladding on the Homeowners' home, or the other homes built by Stanley Martin, to be the same as that used in North Carolina. Neither does the article specify that the North Carolina water intrusion problems were the same problems experienced by the Homeowners. The Washington Post article does not identify whether Stanley Martin used barrier EIFS, drainable EIFS, or some other EIFS variation in cladding the Homeowners' dwelling.

While further evidence, not yet adduced, may establish the facts more conclusively, the record before us is not conclusive. We hold that reasonable persons could disagree over the knowledge imparted, or implied, to the Homeowners by the Washington Post article. Therefore, the issue whether the Homeowners were put on notice and required to act with due diligence after reading the Washington Post article is for resolution by the trier of fact upon a hearing of the evidence and not for summary judgment at this time on this record.

We hold that the trial court erred in granting summary judgment on claims "b" and "c" in the fraud and negligent

misrepresentation counts.  We will reverse the trial court's judgment in that regard.

### C.  MCPA

The Homeowners pled in a separate count of their motion for judgment that Stanley Martin violated the MCPA in the sale and construction of their home.  The trial court's bench ruling and written order granting summary judgment did not identify a reason for dismissing this claim.  Nonetheless, as with the other claims previously examined, our inquiry is whether the record reflects any material issues of fact were genuinely in dispute as to whether the statute of limitations on the MCPA count expired before the Homeowners' motion for judgment was filed.

The parties agree that the applicable statute of limitations for this count is Code § 8.01-248, sometimes called the catch-all statute, which provides a two-year limitation period.  Citing our decision in Parker-Smith v. Sto Corp., 262 Va. 432, 551 S.E.2d 615 (2001), Stanley Martin contends that the Homeowners' MCPA action accrued at the time of injury under § 8.01-230.  Therefore, Stanley Martin argues that the statute of limitations began to run at closing, August 29, 1997, and thus expired on August 29, 1999.  The Homeowners contend that the MCPA is different from the Virginia statute at issue in Parker-Smith and that "the nature of the cause of action at

17

issue should be analyzed when determining whether the 'catch-all' limitation period in Code § 8.01-248 applies." Id. at 439, 551 S.E.2d at 619. The Homeowners then argue that the MCPA claim sounds in fraud sufficiently to require use of the discovery date for purposes of accrual under Code § 8.01-249(1).

We resolve this conflict, for purposes of this case only, on the basis of the parties' representations in submitting the motion for summary judgment to the trial court for decision. In its motion for summary judgment, Stanley Martin made this specific representation to the trial court:

> "Though defendant contends that the MCPA is governed by the two-year catch-all statute, Virginia Code § 8.01-248, defendant will concede, for purposes of this motion only, that the discovery rule applies to this claim as well."

As the only matter before this Court on appeal is the summary judgment motion, Stanley Martin is bound here by the same representation it made to the trial court. Having invited the trial court to use a "discovery rule" for determining the accrual date of the MCPA claim, Stanley Martin cannot now argue for the application of a different rule on appeal. "No litigant . . . will be permitted to approbate and reprobate — to invite error, as the defense did here, and then to take advantage of the situation created by his own wrong." Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988) (citing

18

<u>Sullivan v. Commonwealth</u>, 157 Va. 867, 878, 161 S.E. 297, 300 (1931)).

Therefore, for purposes of our review of the grant of the summary judgment motion on the MCPA claim, we apply the discovery rule in accordance with the parties' framing of the issue before the trial court. In that light, the analysis of the trial court's grant of summary judgment is the same for the MCPA count as for the fraud-based claims "b" and "c" under the fraud and negligent misrepresentation counts. The salient claim of knowledge imputed to the Homeowners comes from the <u>Washington Post</u> article of November 7, 1998. We previously determined that the information in that article was not a sufficient basis for summary judgment based on the record before us. We similarly hold that, with respect to the Homeowners' MCPA claim, reasonable minds could differ as to what notice the <u>Washington Post</u> article gave to the Homeowners. Therefore, we hold that the trial court erred in granting summary judgment on this count because the determination is more appropriately one to be made by the trier of fact upon the hearing of the evidence. We will reverse the trial court's judgment in this regard.

## IV. Conclusion

For the reasons set forth above, we will affirm the trial court's grant of summary judgment as to the breach of contract count regarding the conventional stucco claim and reverse the

19

judgment as to the building code claim.  We will affirm the grant of summary judgment as to claims "a" and "d" of the fraud and negligent misrepresentation counts, but we will reverse the judgment as to claims "b" and "c" of both counts.  As to the MCPA count, we will reverse the trial court's grant of summary judgment.  The case will be remanded for further proceedings consistent with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>

JUSTICE KINSER, dissenting in part and concurring in part.

I agree with the majority opinion except with regard to its analysis of claims "b" and "c" as asserted in the fraud and negligent misrepresentation counts, and the claim brought under the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Commercial Law § 13-301 <u>et</u> <u>seq.</u>  In my view, the November 7, 1998 <u>Washington Post</u> newspaper article provided sufficient information, as a matter of law, to put Michael G. Hansen and Nancy E. Randa (the "Homeowners") on actual or implied notice that the alleged representations by Stanley Martin Companies, Inc. ("Stanley Martin"), that it did not use the same type of stucco product that builders had utilized in North Carolina and that the stucco on the Homeowners' house would not have the North Carolina problems, were false.

A cause of action for fraud is deemed to accrue "when such fraud, mistake, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered." Code § 8.01-249(1). The term "due diligence" is defined as " '[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case.' " STB Marketing Corp. v. Zolfaghari, 240 Va. 140, 144, 393 S.E.2d 394, 397 (1990) (quoting Black's Law Dictionary 411 (5th ed. 1979)). Upon reading the Washington Post article, the Homeowners, through the exercise of due diligence, should have discovered Stanley Martin's alleged fraud. See Pigott v. Moran, 231 Va. 76, 81, 341 S.E.2d 179, 182 (1986) (discovery of fraud occurred when plaintiffs received certain information, not when the information was later confirmed as accurate).

The majority concludes that "[n]othing in the Washington Post article identifies the cladding on the Homeowners' home, or the other homes built by Stanley Martin, to be the same as that used in North Carolina . . . [or] specif[ies] that the North Carolina water intrusion problems were the same problems experienced by the Homeowners." This conclusion is correct. However, the question is not whether the article imparted actual

21

knowledge to the Homeowners regarding the stucco on their house, but whether, with the information presented in the article, Stanley Martin's alleged fraud should have been discovered through the exercise of due diligence. See Code § 8.01-249(1). I conclude that it should have been.

In addition to the information summarized by the majority, the article also states that industry specialists and builders, including Steven Alloy, President of Stanley Martin, were recognizing that the water intrusion problems "weren't a geographic freak," and that "[i]n almost any region where the systems have been used, there are possible problems." Quoting a North Carolina building inspector, the article continues, "I'm finding the same things up in Fairfax that we found [in North Carolina], and just as extensive." The article recites that Stanley Martin is inspecting all its synthetic stucco homes for water problems, and Alloy expressed his wish that other "builders and homeowners would face up to the situation." The article quotes Alloy as saying that "[i]t's going to be a fiasco if people just walk away and let it get worse until it's like what happened in North Carolina."

The Washington Post article also relates that, because of the problems with "barrier EIFS, manufacturers have introduced a new type of synthetic stucco, called drainable or water-managed EIFS." Even if Stanley Martin had used the new drainable EIFS

22

on the Homeowners' house, the fact that it was inspecting every house clad with synthetic stucco in the Homeowners' neighborhood should have placed the Homeowners on notice that their home might have the barrier type EIFS and thus the same water intrusion problems as the homes in North Carolina. In fact, the article advises people to determine whether their home is clad with synthetic stucco, perhaps by asking the builder, and if so, to have their home inspected to determine whether there is a water intrusion problem.

Citing Hughes v. Foley, 203 Va. 904, 907, 128 S.E.2d 261, 263 (1962), the Homeowners acknowledge on brief that they had the burden to show that they acted with due diligence. With the publication of the Washington Post article that the Homeowners admitted they read and found disturbing, the Homeowners should have discovered Stanley Martin's alleged fraud. At that point, they were required to act with due diligence and to inquire further about the stucco on their home. But, they failed to so do within the applicable statute of limitations.

The Homeowners, nevertheless, argue that any fears the Washington Post article raised were calmed after they received a November 16, 1998 report from a company hired by Stanley Martin to inspect their home. This report stated that Stanley Martin had "repaired noted defects and moisture related problems." The report, however, did not specify the type of synthetic stucco

23

used on the Homeowners' house or the cause of the moisture problems that were repaired.  Although, as the Homeowners claim, the report may have temporarily eased their fears, they were still concerned enough to hire an independent company to perform another inspection less than a year after the Stanley Martin inspection.  Despite the Homeowners' claim that they did not know of the problems caused by the EIFS used by Stanley Martin on their home until they received this second report, that report merely confirmed information first imparted to the Homeowners when they read the Washington Post article.  The statute of limitations commenced to run when the alleged fraud should have been discovered with the exercise of due diligence, not when the moisture problems in the Homeowners' house were finally verified.  See Pigott, 231 Va. at 81, 341 S.E.2d at 182.

For these reasons, I conclude, as a matter of law, that claims "b" and "c" were barred by the applicable statute of limitations.  Since the majority utilized the same analysis to reverse the trial court's judgment regarding the MCPA claim, I further conclude, for the reasons stated, that the applicable statute of limitations also barred that claim.  Thus, I respectfully dissent, in part, and would affirm the judgment of the circuit court granting summary judgment on claims "b" and "c" of the fraud and negligent misrepresentation counts and the

MCPA count.  I also respectfully concur, in part, and agree with the majority's disposition of the other counts.