Present:   All the Justices

GARLOCK SEALING TECHNOLOGIES, LLC

OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.

v.  Record No. 050002                November 4, 2005

MICHAEL LITTLE, EXECUTOR OF THE ESTATE
OF ZEBULON A. LITTLE, JR.

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

I.

The primary issue that we consider in this appeal is whether federal maritime principles apply to plaintiff's cause of action against a manufacturer of products used during the construction and repair of submarines situated in navigable waters.

II.

Zebulon A. Little, Jr., filed his motion for judgment against Garlock Sealing Technologies ("Garlock Sealing") and 14 other defendants.  Plaintiff alleged in his motion that he was exposed to asbestos contained in products manufactured by Garlock Sealing and that he contracted mesothelioma as a result of such exposure.  Little died before trial and his action was revived as a wrongful death action by the executor of his estate, hereinafter referred to as plaintiff.

Prior to trial, plaintiff settled, nonsuited, or dismissed his claims against all defendants except Garlock

Sealing.  Plaintiff proceeded against Garlock Sealing, the sole defendant.

Plaintiff presented the following evidence at a jury trial.  Little began work as a machine installation worker at the Newport News Shipbuilding and Drydock Company in April 1961.  He left his employment at the Newport News Shipbuilding and Drydock Company in December 1963 and served in the United States Marine Corps.  He returned to the Newport News Shipbuilding and Drydock Company in February 1968 and resumed his duties as a machine installation worker.

Little performed repairs on submarines, and he worked on construction of submarines that were located on the navigable waters of the James River.  The submarines were moored to the piers owned by the Newport News Shipbuilding and Drydock Company.  He worked for almost a year on a project that overhauled the submarine named the Shark.  He also performed work on the following vessels:  the Henry Clay, the John Marshall, the Sam Houston, the Sam Rayburn, the Hunley, and the Thomas Jefferson.

Little installed and repaired valves and replaced packing in valves to prevent or repair leaks.  He also installed and replaced gaskets on flanges.  A flange is a connection between two sections of pipe, and a gasket is used to seal that connection.

On a daily basis, Little constructed gaskets from sheets of gasket material by cutting the material to a desired size with a knife or saw, punching holes in the gaskets, and grinding the edges of the gaskets. The creation of the gaskets created visible airborne dust that contained asbestos. This dust covered Little's hands and clothing, and he inhaled asbestos-laden dust. Garlock Sealing manufactured the material that Little used to create the gaskets.

Little was also exposed to asbestos when he repaired or replaced gaskets or packing. He removed asbestos pipe covering that was attached to valves or flanges. The removal of these materials, which were not manufactured by Garlock Sealing, caused Little to be exposed to asbestos dust.

Little contracted mesothelioma, which is a fatal form of cancer in the lining of the lungs or stomach. Mesothelioma is "a signal tumor" for asbestos exposure, and there is "virtually no other cause of mesothelioma." Mesothelioma has a latency period of 15 to 50 years or more following the first exposure to asbestos fiber.

Even though Garlock Sealing was the only defendant at trial, Garlock Sealing presented evidence that Little had been exposed to asbestos contained in products that had been manufactured or distributed by other entities. Garlock Sealing, over plaintiff's objection, requested that the jury

apportion damages among several entities that had manufactured products that contained asbestos that Little may have encountered when he worked on submarines, including three entities that were bankrupt. Some of these manufacturers of products that contained asbestos were not defendants in the circuit court and other manufacturers settled with plaintiff before trial. The circuit court permitted the jury to apportion damages among Garlock Sealing, manufacturers who settled before trial, and manufacturers who were never parties to this litigation.

The jury returned a verdict for the plaintiff in the amount of $467,818.59 and apportioned 30% of the damages to Garlock Sealing and 29% of the damages to three entities that were bankrupt. The circuit court entered a final judgment that required that Garlock Sealing pay the 29% of damages apportioned to the bankrupt entities as well as the 30% of damages apportioned to Garlock Sealing. Thus, Garlock Sealing's total liability was 59% of the verdict or $276,012.96. Garlock Sealing appeals.

### III.

### A.

Garlock Sealing assigned the following error in its brief: "The trial court erred in allowing evidence that Garlock Sealing was responsible for other manufacturers'

4

products."  However, in its brief, Garlock Sealing argues that a manufacturer of a product has no duty to warn of the dangers or defects of products manufactured by others.  We will not consider this assignment of error because Garlock Sealing's legal argument in its brief – whether the circuit court improperly imposed certain legal duties against Garlock Sealing – is different from its assignment of error that challenges whether the circuit court properly admitted certain evidence.  See Rule 5:17(c).

B.

Garlock Sealing argues that maritime principles of law should not control the resolution of plaintiff's claims because purportedly Little's exposure to "asbestos-containing products while working aboard ships either pre- or post-launch, has no effect on maritime activities."  Continuing, Garlock Sealing asserts that because of "the uncertainty of contracting disease following exposure and the latency between exposure and disease, there can be no relationship between the alleged tort of negligent failure to warn and/or breach of warranty by an asbestos product manufacturer and traditional maritime activity."  We disagree with Garlock Sealing.

A litigant seeking the application of federal maritime tort law must satisfy both a locality test, demonstrating that the alleged negligence occurred on the navigable waters of the

5

United States, and a nexus test, demonstrating that the wrong bears a significant relationship to traditional maritime activity and has a potentially disruptive impact upon maritime commerce. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995); Matthews v. Commonwealth, 253 Va. 180, 182, 482 S.E.2d 810, 811-12 (1997); Mizenko v. Electric Motor & Contracting Co., 244 Va. 152, 156, 419 S.E.2d 637, 640 (1992) (citing East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 863-64 (1986)).

The Supreme Court held in Sisson v. Ruby, 497 U.S. 358, 364 (1990), that in order to determine whether an activity has a significant relationship to a traditional maritime activity and a potentially disruptive impact on maritime commerce, the relevant activity is not defined by the particular circumstances of the incident. Rather, the relevant activity is determined by the general conduct from which the incident arose.

The record in the case before this Court shows that Little performed work with gaskets on at least 10 submarines lying in navigable waters and that he was injured while performing this work. The installation and maintenance of these gaskets was necessary to enable the submarines to operate properly. The Supreme Court has uniformly and consistently held that ship repair is a maritime activity.

6

John Baizley Iron Works v. Span, 281 U.S. 222, 232 (1930); Messel v. Foundation Co., 274 U.S. 427, 432 (1927); Robins Dry Dock & Repair Co. v. Dahl, 266 U.S. 449, 457 (1925); Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U.S. 479, 480-81 (1923). We hold that plaintiff's cause of action is governed by maritime tort principles. Plaintiff has shown that: Garlock Sealing's tortious acts or omissions were a proximate cause of Little's injuries; that the acts or omissions occurred on navigable waters; that the acts or omissions had a significant connection with maritime activity; and that Garlock Sealing's tortious conduct has a potentially disruptive impact upon maritime commerce.

We find no merit in Garlock Sealing's argument that its wrongful act and the manifestation of injury in Little were not sufficiently close in time to satisfy the exercise of admiralty jurisdiction. The Supreme Court specifically rejected this argument in Grubart. 513 U.S. at 536-38.

In Grubart, the City of Chicago hired a contractor to replace wooden pilings around the piers of certain bridges spanning the Chicago River. In 1991, the contractor replaced the pilings. Approximately seven months later, an eddy formed in a river near a bridge, and the walls and ceiling of a freight tunnel that extended beneath the river collapsed, thereby causing a flood. The Supreme Court rejected the

7

City's argument that admiralty jurisdiction did not lie because the damage must be close in time and space to the activity that caused the damage. The Court stated that in admiralty jurisdiction, the classic principles of proximate causation are applicable, and the use of proximate causation principles "should obviate not only the complication but even the need for further temporal or spatial limitations" between the defendant's negligence and damage caused by that act. 513 U.S. at 536. See also id. at 538.

We also note that in Mizenko, we held that a pipefitter who inhaled toxic solvent fumes while engaged in ship repair aboard a vessel lying in navigable waters could assert a maritime tort claim. 244 Va. at 156. The facts of this case are distinguishable from those of Mizenko only on the basis that the harm resulting from Little's injury was not immediate – a distinction that the Supreme Court rejected in Grubart. Grubart, 513 U.S. at 535-38.

### C.

Garlock Sealing argues that the circuit court erred in its apportionment of damages. Garlock Sealing asserts that pursuant to principles of maritime law, damages are assessed according to the percentage of fault assigned by a jury and that principles of joint and several liability do not apply. Continuing, Garlock Sealing claims that once the jury

8

apportioned fault to three bankrupt insolvent entities, the circuit court erred by requiring that Garlock Sealing compensate the plaintiff for damages apportioned to those insolvent entities.

We will not consider Garlock Sealing's contentions. We note that the procedural posture of this case is very unusual. As we have already stated, Garlock Sealing, over the plaintiff's objections, convinced the circuit court to permit the jury to apportion fault among certain entities that were not parties to this litigation. We will not permit Garlock Sealing to obtain an apportionment of liability among itself and 10 entities that were not parties to this litigation and then complain about the method of apportionment. As we have repeatedly stated, "no litigant . . . will be permitted to approbate and reprobate – to invite error . . . and then to take advantage of the situation created by his own wrong." Cohn v. Knowledge Connections, Inc., 266 Va. 362, 367, 585 S.E.2d 578, 581 (2003) (quoting Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988)); Hansen v. Stanley Martin Cos., 266 Va. 345, 358, 585 S.E.2d 567, 575 (2003). We also observe that we have serious reservations whether federal maritime principles permit a court to enter a judgment reflecting a jury's apportionment of damages among entities who were never named defendants in the lawsuit before the

9

court and from whom plaintiff has received no compensation for his injuries.[*]

For the foregoing reasons, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.

---

[*] The Supreme Court has held that the principle of joint and several liability is applicable in admiralty jurisdiction and that principle was not abrogated by the proportionate share approach rule.  And, we note, that the Supreme Court stated that this principle can result in "one defendant's paying more than its apportioned share of liability when the plaintiff's recovery from other defendants is limited by factors beyond the plaintiff's control, such as a defendant's insolvency."  <u>McDermott, Inc. v. AmClyde</u>, 511 U.S. 202, 220-21 (1994).